712 So.2d 149 (1998)
Treva A. RICHMOND, Individually and on Behalf of her minor child, Teriana Richmond
v.
Pam DOW, R.N., American Casualty Company of Reading, PA., Meadowcrest Hospital, and Wayne Grundmeyer, M.D.
No. 97-CA-1492.
Court of Appeal of Louisiana, Fourth Circuit.
April 1, 1998.
*150 Joseph A. Kott, M.D., J.D., Russ M. Herman, James C. Klick, Herman, Herman, Katz & Cotlar, New Orleans, for Treva A. Richmond and Teriana Richmond Plaintiffs/Appellees.
Edward J. Rice, Jr., Arthur F. Hickham, Jr., Adams and Reese, New Orleans, for Wayne Grundmeyer, M.D. Defendant/Appellant.
Richard G. Duplantier, Jr., Michael J. Ecuyer, Galloway, Johnson, Tomkins & Burr, New Orleans, for Pam Dow, R.N. and American Casualty Company of Reading, PA, Defendants/ Appellants.
Thomas W. Darling, Gretna, for NME Hospital, Inc. d/b/a Meadowcrest Hospital Defendant/Appellant.
Before BYRNES, ARMSTRONG and MURRAY, JJ.
MURRAY, Judge.
The defendants in this medical malpractice action appeal the trial court's judgment overruling their exceptions of improper venue. For the reasons which follow, we reverse the judgment and maintain defendants' exceptions, remanding for the matter to be transferred to a court of proper venue.

FACTS AND PROCEDURAL HISTORY
Treva Richmond was a patient of Dr. Wayne Grundmeyer, who provided prenatal care for her first pregnancy at his Jefferson Parish office near Meadowcrest Hospital. Dr. Grundmeyer also had an office in Orleans Parish, but neither office was designated as his principal place of business. None of the parties to this action are domiciled in Orleans Parish, nor has that parish been designated as the principal place of business for any of the other defendants.
Ms. Richmond was admitted to Meadowcrest Hospital late on January 2, 1994 for labor and delivery. A nurse phoned Dr. Grundmeyer at his home in Jefferson Parish at about 11:30 p.m. to report his patient's status. He responded with routine admission orders. Early the next morning Dr. Grundmeyer phoned the hospital to check on Ms. Richmond's condition, then went to his Orleans Parish office to keep his scheduled appointments with other patients.
At 8:30 a.m. on January 3rd, registered nurse Pam Dow decided that delivery was imminent and called Dr. Grundmeyer's partner, Dr. James Moorman, who was seeing patients at the nearby Jefferson Parish office. The record does not reflect any response from Dr. Moorman to this call. At 9:30 a.m., allegedly without a doctor's order, Ms. Dow administered Pitocin, a labor-inducing drug. Dr. Grundmeyer arrived at Meadowcrest Hospital at approximately 10:00 a.m. and found signs of fetal distress. Ms. Richmond delivered a daughter, Teriana, shortly thereafter. During delivery, the infant sustained an injury to her right shoulder. As a result of that injury, Teriana's right arm is virtually useless.
*151 Following a medical malpractice panel proceeding, this suit was filed in Orleans Parish Civil District Court against Dr. Grundmeyer, Pam Dow and her insurer,[1] and Meadowcrest Hospital.[2] In addition to alleging specific negligent acts by each health care provider, the petition contained the following paragraph:
Venue is proper in this parish in that at least some of the wrongful acts alleged in this petition occurred in the Parish of Orleans.... Specifically, petitioners maintain that Dr. Wayne Grundmeyer was negligent in failing to properly monitor Treva Richmond's labor and/or condition and/or treatment from his office in Algiers, Parish of Orleans.... Petitioners further maintain that Dr. Grundmeyer was negligent in failing to leave his office in Algiers ... timely so that he could be at the hospital and delivery room with sufficient time to evaluate Mrs. Richmond's hospital chart and/or condition before the birth became imminent. These wrongful acts all occurred in the Parish of Orleans....
Dr. Grundmeyer responded with an exception of improper venue, asserting that his "mere alleged presence ... in Orleans Parish at the time that some of the damages allegedly occurred" was an insufficient basis for venue under Article 74 of the Code of Civil Procedure. The other defendants also filed venue exceptions shortly thereafter,[3] adopting the argument advanced by Dr. Grundmeyer. In opposition, Ms. Richmond pointed out that the negligent conduct alleged in the petition was that Dr. Grundmeyer had remained in his Orleans Parish office during Ms. Richmond's labor despite the fact that he was on call and responsible for her care. It was thus alleged that while he was in Orleans Parish, he had failed to properly monitor her condition, failed to properly communicate with the nurse, and failed to leave his office in time to adequately prepare for her child's delivery. Ms. Richmond therefore argued that venue was proper in Orleans Parish as the place "where the wrongful conduct occurred." No evidence was offered by any party on the exception. After considering the pleadings, memoranda and oral arguments, the trial court overruled the defendants' exceptions.
Dr. Grundmeyer promptly moved for a new trial. He asserted that while the court had orally ruled that venue would be appropriate in Orleans Parish if he had monitored Ms. Richmond's labor from that office, he was now prepared to prove that, in fact, he had not monitored her condition at all during the time he was seeing other patients. In support, Dr. Grundmeyer submitted his own affidavit, five pages from Dr. Moorman's deposition, and the nurses' notes from Ms. Richmond's chart. He argued that because this evidence established that he had no responsibility for Ms. Richmond's care during the period in question, a new trial should be granted "so that this additional evidence may be considered." The other defendants also moved for a new trial, again relying upon Dr. Grundmeyer's arguments and evidence.
Ms. Richmond's opposition to the motions first pointed out that because the defendants had failed to even mention the requirements for a new trial set forth in Articles 1972-73 of the Code of Civil Procedure, they could not have established that their motions should be granted. In addition, she argued that the "new" evidence was contradictory and thus failed to establish that Dr. Grundmeyer's wrongful conduct had not been committed in Orleans Parish.
The motions for new trial were denied after contradictory hearing. In written reasons, the court confirmed its prior ruling "that if Dr. Grundmeyer monitored [Ms. Richmond's] labor from his Orleans Parish *152 office, then venue was appropriate" where the suit was filed. The court further noted its agreement with the defendants' argument "that if Dr. Moorman was on call that morning, then Dr. Grundmeyer played no part in monitoring plaintiff's labor .... [and] there would be no connection to Orleans Parish." It was determined, however, that the weight of the evidence established that Dr. Grundmeyer, rather than his partner, had been on call the morning of January 3, 1994. Because the defendant doctor had therefore monitored Ms. Richmond from his office in Orleans Parish, venue was found to be proper under Article 74.
All three defendants moved for a devolutive appeal from the interlocutory judgment under Herlitz Construction Co. v. Hotel Investors of New Iberia, 396 So.2d 878 (La. 1981), and Lapeyrouse v. United Services Automobile Association, 503 So.2d 627 (La. App. 4th Cir.1987). In addition, both Dr. Grundmeyer and Meadowcrest Hospital filed untimely applications for supervisory writs with this court. While the hospital's writ application was withdrawn one day after filing, Dr. Grundmeyer's application was formally denied as untimely. The writ panel noted, however, that "in the interest of judicial economy we have reviewed relator's writ application and find no error in the judgment denying the exception to venue and the judgment denying relator's motion for a new trial."

DISCUSSION
We first address Ms. Richmond's contention that because this court previously ruled on this issue when Dr. Grundmeyer's writ application was denied, the "law of the case" doctrine precludes further review in this appeal. As this court previously explained in Sattar v. Aetna Life Insurance Co., 95-1108, pp. 3-4 (La.App. 4th Cir. 3/20/96), 671 So.2d 550, 552-53, the denial of an application for supervisory writ does not bar relitigation of an issue on direct appeal, even if an opinion has been expressed as to the merits. See Tolis v. Bd. of Supervisors of LSU, 95-1529, p. 3 (La.10/16/95), 660 So.2d 1206, 1207. Accordingly, we turn now to the arguments raised by the parties.
Although a suit must generally be filed in the parish where a defendant is domiciled under Article 42 of the Code of Civil Procedure, Articles 71 through 85 provide optional venue alternatives which supplement the general rule. Jordan v. Central Louisiana Electric Co., Inc., 95-1270, p. 2 (La.6/23/95), 656 So.2d 988, 989; Kellis v. Farber, 523 So.2d 843 (La.1988). At issue in this case is the alternative venue provision of Article 74, which declares that "[a]n action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained."
The defendants[4] contend that venue cannot be proper in Orleans Parish because Dr. Grundmeyer's presence there had no connection to his treatment of Ms. Richmond. Under the plaintiff's interpretation, they argue, a physician could be sued in any parish that he may have visited at anytime during his treatment of a patient. The defendants assert that under similar circumstances, in In re Medical Review Panel of Bechet, 609 So.2d 982 (La.App. 4th Cir.1992), amended in part on other grounds, 612 So.2d 71 (La. 1993), this court disregarded the physician's location and found instead that venue was proper where the patient was hospitalized at the time an act of omission occurred. They further claim that the trial court's finding that Dr. Grundmeyer was technically on call that morning is irrelevant, because it is undisputed that he took no action relating to Ms. Richmond's care while he was in his Orleans Parish office. Unless this ruling is reversed, they argue, the choice of venue under Article 74 becomes totally capricious, a result rejected by this court in Coursey v. White, 184 So.2d 625 (La.App. 4th Cir.1966).
In response, Ms. Richmond points out that the primary wrong asserted in her suit is that despite her high-risk status, Dr. Grundmeyer decided to attend to his other patients in his Orleans Parish office rather than to *153 monitor her condition. Furthermore, although the defendants attempt to characterize the doctor's presence in Orleans Parish as fortuitous, the plaintiff notes that it was his choice to maintain offices in the two adjoining parishes. Distinguishing the cases cited by the defendants, she asserts that the Article 74 jurisprudence concerning "where the wrongful conduct occurred," particularly Chambers v. LeBlanc, 598 So.2d 337 (La.1992), Johnson v. Tschirn, 94-0085 (La. App. 4th Cir. 2/25/94), 635 So.2d 254, writ denied, 94-1543 (La.9/23/94), 642 So.2d 1300, and McDaniel v. Reed, 613 So.2d 758 (La. App. 4th Cir.), writs denied, 615 So.2d 344-45 (La.1993), fully supports the trial court's decision. Finally, Ms. Richmond argues that the "additional" evidence submitted by Dr. Grundmeyer, although not properly before the court, proves that he was responsible for her care and thus breached his duty by going to his Orleans Parish office. Therefore, because the Official Comments to Article 74 expressly state that "`wrongful conduct' ... applies to acts of both omission and commission," she asserts that venue is proper in Orleans Parish, where the doctor's failure to act occurred.
Although the parties dispute both the significance of Dr. Grundmeyer's evidence as well as the propriety of its consideration, we find it unnecessary to resolve those disputes in order to decide this case. Whether Dr. Grundmeyer was on call or not, we will assume that, as Ms. Richmond asserts, he had a duty to arrive at the hospital earlier or to ensure another physician's presence during her labor. We will also assume that her baby would not have been injured during the delivery if he had properly communicated with the hospital staff during labor and had arrived at the hospital on a timely basis, as Ms. Richmond claims. As explained more fully below, we find that under these facts Dr. Grundmeyer's presence in his Orleans Parish office during the plaintiff's labor does not establish that his wrongful conduct occurred there within the intendment of Article 74.
Where Article 74 permits venue "in the parish where the wrongful conduct occurred," it presupposes that the location has some relationship to the cause of action. For venue purposes it is often difficult to determine where a "sin of commission" occurs. The present case raises the even more interesting and perplexing question of, "Where does a sin of omission occur for venue purposes?" In other words, where the complained-of negligence consists of a failure to act, rather than an act negligently performed, we are faced with the seemingly paradoxical task under Article 74 of determining the location of a non-event. Three solutions suggest themselves:
1. The location of the tortfeasor at the time of the alleged failure to act.
2. The place where the omitted act should have been performed.
3. The place where the damage occurs.
Ms. Richmond argues that the first approach applies here. In rebuttal to the defendants' assertion that this could result in a capricious choice of venue, she emphasizes that Dr. Grundmeyer's decision to maintain offices in two parishes provides a limiting and objective factor in the analysis. She maintains that under similar circumstances, it was decided in Chambers v. LeBlanc that a malpractice defendant's wrongful conduct could be seen to have occurred where his office was located rather than where the omitted act should have been performed.
In Chambers, the plaintiff sued an attorney based upon his failure to file a timely suit in East Baton Rouge Parish. While the defendant's practice was located in Ascension Parish, the trial court found venue was proper at the plaintiff's domicile, Livingston Parish, because damages had been sustained there. The Supreme Court summarily reversed the judgment, holding that if damages are caused in the same parish in which the wrongful conduct occurred, then venue is proper in that parish under Article 74. Stating that "the wrongful conduct occurred either in Ascension Parish or East Baton Rouge Parish, but clearly not in Livingston Parish," the court ordered the matter transferred. Ms. Richmond relies upon this statement as establishing that under Article 74, venue in this case is proper in either parish, Jefferson or Orleans, in which Dr. Grundmeyer maintained an office. However, *154 we read the court's reference to venue in Ascension Parish as being based upon the attorney-client relationship, which gave rise to the defendant's duty to act, having been developed and maintained there. In contrast to that situation, Ms. Richmond's relationship with Dr. Grundmeyer had no connection to his Orleans Parish office because it is undisputed that her prenatal care was provided at his office in Jefferson Parish. Furthermore, there is no suggestion in Chambers that the attorney's physical location when he should have been filing suit was a relevant consideration. Thus, Chambers provides no support for Ms. Richmond's assertion of venue in Orleans Parish under these facts.
Similarly, we find little assistance in the case of McDaniel v. Reed, offered by Ms. Richmond as another illustration of a situation in which venue may be proper in more than one parish. The claim asserted in McDaniel was for the wrongful death of a patient whose condition had been treated by three doctors in succession, in three different parishes. Although noting that venue might be proper as to each separate defendant in the various parishes in which they practiced, this court held that venue was proper as to all defendants where the death occurred, because that was where the damages were sustained and where the cause of action arose. In the present case, however, the issue is not where suit may be filed when venue might be proper in more than one parish, but whether venue is proper in Orleans Parish as the situs of Dr. Grundmeyer's wrongful conduct. Additionally, because it appears that McDaniel involved acts that were negligently performed, rather than the failure to take proper action, it suggests no answer to the question presented here.
Johnson v. Tschirn, the final case cited by Ms. Richmond, however, does offer some guidance in answering the question posed here. In Tschirn, an attorney domiciled and practicing in Jefferson Parish allegedly failed to properly oppose a defense motion for summary judgment, resulting in dismissal of the plaintiff's suit in the federal district court in New Orleans. When the plaintiff subsequently filed a legal malpractice action in Orleans Parish state court, the defendant attorney responded with a venue exception, asserting that the suit should be transferred to Jefferson Parish. Although the trial court maintained the exception, this court reversed "because the required conduct in question, the filing of documents, had to take place at the federal courthouse in New Orleans." Contrary to the position urged by Ms. Richmond, Tschirn specifically held that the attorney's act of omission occurred in Orleans Parish where the pertinent conduct should have been performed, not at his Jefferson Parish office where he was when he failed to act.
Tschirn and Chambers both support the conclusion that the portion of Article 74 that provides that venue is proper "in the parish where the wrongful conduct occurred" presupposes an association between that location and an act, whether a "sin" of omission or commission, that gave rise to the cause of action. On the particular facts presented here, however, we can find no connection between Dr. Grundmeyer's presence in Orleans Parish and the elements of Ms. Richmond's claim. Although the trial court concluded that the doctor was on call, and thus was responsible for monitoring her labor that morning, his duty to act arose from the doctor-patient relationship that had been formed and maintained entirely in Jefferson Parish. Nor is any negligent act of omission or commission alleged to have been taken by the doctor while in his Orleans Parish office, such as ignoring a report from the hospital or issuing erroneous instructions to other medical personnel. In addition, all damages, the last element of the plaintiff's claim, were suffered in Jefferson Parish.
For these reasons, we must reject Ms. Richmond's contention that Article 74 provides for venue in Orleans Parish under the facts alleged in this case. That provision specifies that venue is proper "in the parish where the wrongful conduct occurred," not simply "where the tortfeasor was" at a point in time at which it is alleged he should have been elsewhere. Because there is no relationship between Dr. Grundmeyer's location during Ms. Richmond's labor and his alleged acts of omission, we find that venue is not proper in Orleans Parish.
*155 Accordingly, the judgment of the trial court overruling the exceptions to venue is reversed, and the exceptions are maintained.[5] The case is remanded to the district court to transfer the action pursuant to Article 932 of the Code of Civil Procedure.
REVERSED AND REMANDED.
BYRNES, J., concurs with reasons.
BYRNES, Judge, concurring with reasons.
I agree entirely with the majority on both the facts and the law. LSA-C.C.P. art. 74 says that venue is proper where the wrongful conduct occurs. Does this necessarily mean the location of the tortfeasor where the wrongful act is really a failure to act, a non-event, i.e., where it could be said that nothing has occurred? I concur only for the purpose of elaborating on the three possible solutions suggested by the majority
1. The location of the tortfeasor at the time of the alleged failure to act. This is the plaintiffs' position in the instant case. This category should apply only in those instances in which the location of the failure to act has some relationship with the duty owed or the resulting injury.
2. The place where the omitted act should have been performed.
3. The place where the damage occurs.
Where LSA-C.C.P. art. 74 permits venue "in the parish where the wrongful conduct occurred" it presupposes that the location has some relevance to the breach of duty or the resulting injury. Dr. Grundmeyer's location at the time of the alleged breach of duty and injury is irrelevant to his failure to monitor, assuming that he could have monitored by phone. He could fail to monitor by phone from any place in the state, or in the world for that matter.
The problem with discussing this first category is that we think of Dr. Grundmeyer's breach of duty as a "failure to act" which creates a fallacy of equivocation[6] when we try to compare Dr. Grundmeyer's "failure" with other breaches that we might also casually classify as "failures to act", but which on closer examination can be seen to be better classified as acts performed deficiently rather than not performed at all. An act performed deficiently can be meaningfully located at the place of deficient performance. An example of an act deficiently performed that we might casually refer to as a "failure to act" would be the "failure to spot a tumor on an x-ray." What we might call a failure to diagnose is really a misdiagnosis, a misreading of the x-ray (a true "event" that should be locatable, as opposed to Dr. Grundmeyer's failure to phone, a "non-event" without meaningful location) and the location of the misdiagnosis has some meaningful relationship to the breach of the duty owed and/or the resulting injury. Dr. Grundmeyer could fail to phone from anywhere. A failure to diagnose can only occur where diagnosis could have occurred. Thus many things we might superficially think of as "failures to act" are really acts that fail to produce the obligatory result.
I see no irreconcilable inconsistency with the clear language of LSA-C.C.P. art. 74 in rejecting this first approach in those instances where there is no meaningful location for a true failure to act, or non-event. LSA-C.C.P. art. 74 says "where the wrongful act occurred", not "where the tortfeasor was located when the wrongful act occurred."
The second suggested approach also fails to present a universal solution when applied to the facts of this case. The location where the omitted act should have been performed is elusive in this case. Although the most *156 obvious place for Dr. Grundmeyer to have monitored Ms. Richmond was at the hospital in Jefferson Parish, he also arguably could have monitored her condition by phone from any location, which would be meaningless. However, we recognize that in many cases there will only be one location where the omitted duty could have been performed, e.g. where part of the duty owed is to be at that location. In those instances that location would have a meaningful relationship to the breach of the duty and/or the resulting damage, and, therefore, would be an appropriate situs for venue.
The third approach, the parish where the damage was sustained, should be adopted as a fall back where neither of the first two approaches provide a meaningful solution.
Assuming that Dr. Grundmeyer could monitor by phone, I would find that Dr. Grundmeyer's physical presence in Orleans at the time he failed to monitor is meaningless. Because the only place from which Dr. Grundmeyer could have monitored Ms. Robinson's condition in person was at the hospital in Jefferson and because damages were sustained in Jefferson which is meaningful, venue is proper in Jefferson.
From this analysis I conclude that where venue is sought to be based on the location of an omission the inquiry should not be mechanical and reflexive, but should instead be directed toward finding a logical and meaningful connection between the omission and the choice of venue.
NOTES
[1] American Casualty Company of Reading, PA.. Although we will hereafter refer only to Ms. Dow as a defendant, her insurer is impliedly included in such references.
[2] While the hospital's district court pleadings were filed on behalf of "Tenet Healthsystem Hospitals, Inc. d/b/a Meadowcrest Hospital," its appellate brief was submitted under the name "NME Hospitals, Inc. d/b/a Meadowcrest Hospital." We will therefore refer to this defendant simply as "Meadowcrest Hospital."
[3] Tenet Healthsystem Hospitals, Inc. also filed an exception of insufficiency of service of process that was subsequently overruled after the plaintiff obtained service through the proper agent.
[4] Because counsel for Meadowcrest Hospital and Ms. Dow merely duplicated Dr. Grundmeyer's appellate brief, with a few inconsequential changes, we are treating the arguments of all three defendants collectively.
[5] Because of our decision on the merits of the venue exceptions, we need not address the defendants' assertions of error in the denial of their motions for new trial.
[6] The fallacy of equivocation is the logical fallacy that occurs when we use the same term more than once in the same context, but with slightly shifting senses of meaning without recognizing that the meaning has changed. An example of this would be to argue that you have an obligation to join the Ku Klux Klan because you have the right of freedom of association, and you always have the obligation to do what is right. In this example the word "right" has two different meanings, but the difference is ignored. It is easy to spot the fallacy in this example, but instances occur everyday that are quite subtle.