843 So.2d 623 (2003)
Roy W. HALL and Helen Hall
v.
The FOLGER COFFEE COMPANY and XYZ Insurance Company.
Folger Coffee Company
v.
Roy W. Hall and Helen Hall.
Nos. 2002-CA-0920, 2002-CA-0921.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 2003.
Rehearing Denied May 15, 2003.
*624 Dominic J. Gianna, John D. Person, Marianne Garvey, Jennifer Caulfield, Jeffrey A. Raines, Middleberg, Riddle & Gianna, New Orleans, LA, for Appellee (The Folger Coffee Company).
Ford J. Dieth, Marsha B. Martin, Dieth and Martin, Metairie, LA, for Appellants (Roy and Helen Hall).
Isaac H. Soileau, Jr., Logan & Soileau, LLC, New Orleans, LA, for Intervenor-Appellant.
(Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY).
PATRICIA RIVET MURRAY, Judge.
This nullity action was brought by Folger Coffee Company to annul a default judgment rendered against it based on insufficiency of service of process. Although the trial court initially granted summary judgment annulling the default judgment, this court vacated that decision and remanded. Folger Coffee Co. v. Hall, 97-2472 (La.App. 4 Cir. 6/24/98), 715 So.2d 1224 ("Folger I"). Following a bench trial on remand, the trial court again annulled the default judgment. Finding Folger failed to meet its burden of proving the invalidity of the presumptively valid sheriff's return, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND
A chronology of the events leading to the instant controversy is as follows. On November 15, 1994, Roy Hall was involved in an accident when he fell from a platform at Folger's warehouse in New Orleans. At the time of the accident, he was delivering coffee cans for his employer, T.T.C. Illinois, Inc. ("TTC"). On October 10, 1995, Mr. Hall and his wife, Helen Hall, filed a personal injury action against Folger in Civil District Court for the Parish of Orleans *625 (CDC No. 95-15166)(the "Hall Suit"). In their petition, the Halls requested Folger be served through its registered agent for service of process, CT Corporation System ("CT"), at its Baton Rouge office.
Although the parties dispute whether service was actually made, the record in the Hall Case contains the return reflecting that service was made as requested on CT. The return recites that Deputy Sheriff Harvey Thompson of the East Baton Rouge Parish Sheriff's Office served CT on November 1, 1995 by "handing said copy to Mary A. Belton, [CT's] Assistant Secretary in person."[1] Pursuant to La. C.C.P. art. 1292, the East Baton Rouge Sheriff's Office promptly mailed the return back to the Clerk of the Civil District Court of Orleans Parish. Thereafter, Folger neither answered the petition nor filed other responsive pleadings. On January 24, 1996, a preliminary default was entered against Folger. On July 15, 1996, the default was confirmed and judgment was entered against Folger, awarding Mr. Hall $910,572.79 in total damages and Mrs. Hall $45,000 in loss of consortium damages.
Pursuant to La. C.C.P. art.1913, the clerk of the Civil District Court mailed the default judgment to Folger through its agent for service of process, CT. On July 31, 1996, CT received the default judgment. Pursuant to its routine delivery instructions, CT notified Folger by telephone and transmitted the default judgment by Federal Express to Folger through its parent company, Procter and Gamble ("P & G"). On August 1, 1996, P & G received the default judgment. Folger asserts that neither it nor CT had any notice of the Hall Suit until they received the default judgment.
In response, Folgers initially filed a motion for suspensive appeal and posted the required appeal bond on August 21, 1996. (No. 96-CA-2146). On November 12, 1996, Folger filed in this court a motion to stay the appeal and filed in the district court the instant nullity action (CDC No. 96-18775)(the "Nullity Action"). In the Nullity Action, Folger asserted that it was never served with the citation and petition in the Hall Suit, never waived service, and never made a general appearance. The trial court consolidated the Nullity Action with the Hall Suit.
On January 16, 1997, this court granted Folger's motion and ordered that the default judgment appeal be stayed "until appellant's action of nullity is final." As discussed elsewhere in this opinion, we subsequently dismissed that default judgment appeal with the caveat that all the issues in that appeal were preserved for the appeal of the nullity judgment.
Meanwhile, on May 1, 1997, TTC filed a Petition of Intervention into the Hall Suit seeking to assert its rights under the Workers' Compensation Law in the Halls' tort recovery. Subsequently, TTC also intervened into Folger's nullity suit. Although the trial court granted Folger's exceptions to TTC's intervention in the nullity action, this court reversed, finding the employer had a right to intervene. Hall v. Folger Coffee Co., XXXX-XXXX c/w XXXX-XXXX (La.App. 4 Cir. 2/7/01), 781 So.2d 620. In so doing, we expressly noted the then pending, yet stayed, default judgment appeal. As noted, TTC is the applicant in one of the instant appeals.
On June 9, 1997, the trial court granted Folger's motion for summary judgment, reasoning that although the return was *626 presumed correct, Folger rebutted the presumption by introducing affidavits establishing that CT was not served and that Folger never received the service documents. From that decision, the Halls appealed. Framing the pivotal issue presented as whether service of process was effected on Folger through CT and finding a genuine issue of material fact remained on that pivotal issue, we reversed. Folger I, supra. We reasoned that the affidavits and documents submitted by the parties were in direct opposition, and concluded that "Folger's evidence tends to show service was not made; the Hall's evidence tends to show service was made." Folger I, 97-2472, p. 5, 715 So.2d at 1226.
Meanwhile, on July 25, 2001, the Halls filed peremptory exceptions of no cause of action and no right of action in Folger's nullity suit. They argued that Folger was precluded from filing its nullity suit because it made a general appearance on August 21, 1996 when it filed its Motion for Suspensive Appeal seeking review of "all aspects" of the default judgment. On September 17, 2001, TTC likewise filed the same exceptions and asserted the same arguments. On September 28, 2001, the trial court overruled the exceptions.
That ruling was the subject of writ applications to both this court and the Louisiana Supreme Court.[2] On October 10, 2001, this court denied the Hall's writ (2001-C-1899), stating that "[o]n the showing made, the district court has not abused its vast discretion in ... overruling their Exceptions of No Cause of Action and No Right of Action." On October 12, 2001, this court granted in part TTC's writ (2001-C-1901), ordering the district court to provide TTC with the judgment of September 28, 2001, but otherwise denying the writ, stating that "[o]n the showing made, the district court has not abused its vast discretion in ... overruling their Exceptions of No Cause of Action and No Right of Action." On October 17, 2001, the Louisiana Supreme Court denied the Hall's and TTC's request for a stay and writ application. Folger Coffee Co. v. Hall, 2001-2784 (La.10/17/01), 799 So.2d 1140.
Also on October 17, 2001, a bench trial in the nullity suit was held. At trial, Folger called five witnesses to testify. Two of its witnesses, Linda Rohrer and David L. Grayson, were employees in P & G's Cincinnati, Ohio office. Mr. Grayson, P & G's in-house counsel, testified that CT has been Folger's registered agent for service of process in this state since the early 1960's. He acknowledged that service on CT is service on Folger. He also testified that during the pertinent period CT has sent every service of process made on Folger through CT's Baton Rouge office to P & G's Cincinnati office.
Both Mr. Grayson and Ms. Rohrer detailed P & G's routine office procedures for documenting receipt of service of process from CT, which included maintaining a litigation log. They both testified that P & G's business records reflect that it never received a copy of the citation and petition in the Hall Suit. However, neither Ms. Rohrer nor Mr. Grayson had ever been to Baton Rouge; hence, neither of them had any personal knowledge regarding the service in question.
Folger's other three witnesses were employees at CT's Baton Rouge office; to wit: Ms. Belton, the office manager; Judy Fritch, a special assistant secretary; and Shawna Smith, a fulfillment specialist. None of these employees had personal knowledge of whether CT was personally served with the citation and petition in the Hall Suit on November 1, 1995. Rather, *627 these employees' testimony addressed CT's general procedures for handling the large volume of services received daily by CT, which is in the business of acting as a professional agent for receiving service of process.
According to Ms. Belton, CT receives approximately twenty thousand services per year. Ms. Belton detailed the step-by-step procedures that were routinely used by CT's office in handling such services; specifically, those procedures were as follows:
 Around 9:00 a.m., Deputy Thompson dropped off a bundle of service documents at the front desk of CT's Baton Rouge office. He never contemporaneously completed the returns while at CT's office; indeed, he never brought the returns with him to CT's office.
 The first CT employee to arrive each day (generally Ms. Fritsch) unbundled the services, counted them, and wrote the number of services (not the names) on a legal pad. That same employee then divided the services among the CT employees in the office that day to process the services by entering them into the computer.
 Each employee then processed her individual pile of services. In so doing, each employee's first step was to verify that the service was for a CT customer (i.e., an entity for whom CT was the registered agent for service of process in Louisiana) by checking the "company search screen." If not, the employee contacted the sheriff's office and the service was returned to them. If so, the employee entered the data from the service into a "service of process worksheet" on the computer.
 Each employee's second step was to activate the delivery instruction screen to determine the customer's choice of delivery method. Like most CT customers, Folger's choice was Federal Express.
 Each employee's third step was to activate the "transmittal" screen, which merged the prior information into a transmittal letter addressed to the customer.
 Each employee's fourth and final step was to place the transmittal letter and service documents together in a package to be sent out that same day to the customer. For most customers, the service was sent out by Federal Express.
 At the end of the day, Ms. Belton reconciled the legal pad count with the number of services entered into the computer to ensure that the number of service documents entered into the computer as received matched the hand tally on the legal pad. The legal paid was discarded when it was finished.
 CT keeps a paperless office. It keeps no hard copies or photocopies of any service documents or documents related thereto; all CT's records are stored in the computer data base.
According to both Ms. Belton and Ms. Fritsch, their independent searches of CT's computer database and the Federal Express tracking log revealed no evidence of receipt of the citation and service in the Hall Suit directed to Folger. Ms. Belton testified that the first documentation that could be found in CT's computer database of the Hall Suit was the receipt of the default judgment. Particularly, CT's database reflected that Ms. Smith processed the default judgment as received on July 31, 1996, that it was sent to CT by regular mail, and that it was postmarked July 30, 1996. Ms. Smith testified that the reason she knew she was the employee who processed the default judgment was because her initials appear on the bottom right *628 hand corner behind Ms. Belton's on the transmittal form that was sent with the default judgment by Federal Express to P & G. According to Ms. Smith, the computer reflected this was the first documentation CT received in the Hall Suit and thus she had to start from scratch in entering it into the computer.
According to Ms. Smith, before CT converted to a new software system, apparently in 1994, it kept a by name list of the services received. She further testified that the reason they discontinued the by name list was because the current computer system was capable of generating a list of the service documents that are received on any given day or in any given time period. She acknowledged, however, that this list must be generated after the fact.
Ms. Fitsch's testimony corroborated that of Ms. Belton and Ms. Smith regarding CT's routine operating procedures.
The only other live witness at trial was Deputy Sheriff Ray Antoine, the supervisor of the Civil Process Division in East Baton Rouge Parish, who was called as a witness by the Halls and TTC. Deputy Antoine testified that he was Deputy Thompson's supervisor. He further testified that in 1993 when he was assistant supervisor and Deputy Jerry Bennett (now retired) was supervisor they met with Ms. Belton and another CT representative regarding CT's relocation of its office from New Orleans to Baton Rouge.[3] Deputy Antoine stated that Ms. Belton authorized the sheriff's office to use a stamp to reflect CT's acceptance of service; that stamp states that the named defendant was served through CT by "handing said copy to Mary A. Belton, Assistant Secretary in person." He further stated that the routine office procedure in the sheriff's office is that the returns stay in the office and that only the actual service copies are taken out of the office.
By stipulation, the deposition, rather than live, testimony of Deputies Thompson, Bennett, and McGee was introduced into evidence. The gist of the deposition testimony was that none of the deputies had personal knowledge of whether CT was served with the Hall's Suit on November 1, 1995; rather, the deputies' testimony addressed the routine procedures that the East Baton Rouge Parish Sheriff's Office used for serving process. Particularly, the routine procedures in 1995 included the following steps:
 Deputies McGee and Thompson worked together to effectuate service of process on CT customers through CT.
 Deputy McGee time and date stamped both the return and service. She then detached the return from the service copy, created two piles (bundles), one for return papers and one for original service papers; and meticulously counted the two piles to ensure they contained an equal number.
 Deputy McGee manually typed pertinent information from the returns onto a log sheet, which included for each suit the name, parish of origin, and payment information. A copy of that log dated November 1, 1995 was attached to her deposition and introduced into evidence at trial. That log sheet reflected the Hall Suit (CDC No. 95-15166) as one of the services to be made on CT for that date and reflected it originated in Orleans Parish *629 and listed the check number that paid for that service.
 Deputy McGee then reconciled the log entries with the number of returns and service originals to ensure they were equal.
 Deputy McGee then placed rubber bands around the bundle of services to secure them vertically and horizontally. She then wrote the date for service and "C.T. Corporation" on a slip of paper that she affixed to the bundle, and placed the bundle in a basket for Deputy Thompson to deliver to CT the next day.
 The next day, Deputy Thompson retrieved the bundle from the basket and delivered it to CT.
 The returns always remained at the Sheriff's Office. Deputy McGee placed them in Deputy Thompson's personal box in the office for him to stamp after he made the services.
 Deputy Thompson stamped the returns one or two days after serving CT using two stamps. A special stamp, agreed upon by Ms. Belton, was used to reflect service on CT, and a second stamp was used in lieu of Deputy Thompson's signature. The latter signature stamp was used due to the large volume of his service load.
 After stamping the returns, Deputy Thompson left the packet for distribution by other sheriff office personnel to the respective sheriffs from the originating parishes.
Deputy Thompson stated that he makes approximately three to four thousand services per month. He further stated that he made the service of the Hall Suit petition and citation on CT using the same method as all the other services he makes on CT.
The trial court took the matter under advisement and allowed the parties to submit post-trial memoranda. On November 9, 2001, the trial court ruled in favor of Folger, nullifying the default judgment and adopting as its written reasons the legal argument portion of Folger's post-trial memorandum. The instant appeals by the Hall and TTC followed, and Folger answered those appeals.

ANALYSIS
A judgment against a party who has not been served and who has not appeared is an absolute nullity. Jenkins v. Capasso, XXXX-XXXX (La.App. 4 Cir. 2/5/03), 836 So.2d 1286. That principle is codified in La. C.C.P. art.2002 A(2), which provides:
A final judgment shall be annulled if it is rendered:
. . .
(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken;
That principle was the basis for Folger's nullity action.
Finding that Folger rebutted the presumption of validity of the sheriff's return and that CT was never actually served with the citation and petition in the Halls Suit, the trial court annulled the default judgment. The Halls and TTC argue that the trial court erred, procedurally and substantively. Procedurally, they argue that the trial court erred in finding that Folger had not made a general appearance and thereby waived its right to bring this nullity action under La. C.C.P. art.2002 A(2). Substantively, they argue that the trial court erred in finding that Folger met the burden of proof required to rebut the presumption of validity accorded to the sheriff's *630 return by La. C.C.P. art. 1292. We separately address these two arguments.

PROCEDURAL ISSUES
The Halls and TTC argue that Folger made a general appearance, waiving its right to raise the insufficiency of service of process, by appealing from "all aspects" of the default judgment. Folger counters that this court's prior rulings on the Halls' and TTC's writ applications are "law of the case" and preclude reconsidering the general appearance issue. Folger's reliance on the law of the case doctrine is misplaced. This court denied both prior writ applications insofar as they pertained to the general appearance issue. The denial of a supervisory writ application does not bar re-litigation of an issue on direct appeal. Richmond v. Doe, 97-1492, p. 5 (La.App. 4 Cir. 4/1/98), 712 So.2d 149, 152 (citing Sattar v. Aetna Life Ins. Co., 95-1108, pp. 3-4 (La.App. 4 Cir. 3/20/96), 671 So.2d 550, 552-52).
The Halls and TTC argue that Folger made a general appearance under former La. C.C.P. art. 7, which provided:
Except as otherwise provided in this Article, a party makes a general appearance which subjects him to the jurisdiction of the court and impliedly waives all objections thereto when, either personally or through counsel, he seeks therein any relief other than:
. . .
(5) Dismissal of the action on the ground that the court has no jurisdiction over the defendant.[4]
Particularly, they rely upon the language in Folger's notice of appeal stating that "[m]over desires to appeal suspensively from all aspects of the judgment rendered... on July 15, 1996." (Emphasis supplied). They contend that underscored language seeks relief other than dismissing the action because of the court's lack of jurisdiction over the defendant and thus constituted a general appearance.
Both sides rely on the same case as standing for the proposition that Folger's notice of appeal was or was not a general appearance. DLJ of Louisiana # 1 v. Green Thumb, Inc., 334 So.2d 801 (La. App. 3 Cir.1976). According to Folger, their notice of appeal was drafted based on the DLJ case. According to the Halls and TTC, under the following language in DLJ Folger's notice of appeal constituted a general appearance; to wit:
We believe that a defendant who moves for an appeal from a default judgment rendered against him, without specifying the grounds he intends to urge on appeal, does not by that motion make a general appearance in the case, provided that the only relief he seeks on appeal is the dismissal of the suit on the ground that the court has no jurisdiction over him. If he seeks any other type of relief while the case is on appeal, however, we think his actions in seeking that relief will constitute a general appearance and an implied waiver of all objections he may have to the jurisdiction of the court.

334 So.2d at 804 (Emphasis supplied).
Relying on two other procedural provisions, we find Folger did not make a general appearance. First, La. C.C.P. art. 2088 provides that "[t]he jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal." La. C.C.P. art. 2088 (Emphasis supplied). *631 Hence, Folger's use of the "all aspects" language added nothing to the scope of the appeal.
Second, La. C.C.P. art.2005 provides that "[a]n action of nullity does not affect the right to appeal" and that "[a] judgment may be annulled prior to or pending an appeal therefrom, or after the delays for appealing have elapsed." La. C.C.P. art.2005. Because the record on appeal from a default judgment ordinarily will not contain any evidence regarding the sufficiency of service, the general rule is that a party against whom a default judgment has been rendered who seeks to challenge the sufficiency of service must do so by bringing a nullity action. Explaining this general rule, the court in Decca Leasing Corp. v. Torres, 465 So.2d 910 (La.App. 2 Cir.1985), stated that "the practical effect behind requiring that the defendant bring an action to annul the judgment is to permit the introduction of additional evidence as to the mode and execution of service of process." 465 So.2d at 914. Hence, LCCP art.2005 recognizes that a defendant against whom a default judgment is entered can contemporaneously appeal and file a nullity action. See also La. R.S. 13:3471(5).[5]
Pursuant to Article 2005, Folger had the right not only to appeal the default judgment, but also to file a nullity action. Although the preferable procedure would have been for Folger to file the appeal and nullity action simultaneously, we cannot say that Folger waived its right to file a nullity action merely by lodging its appeal at an earlier time and then having that appeal stayed pending a final ruling on the nullity action. We thus find that Folger did not make a general appearance, waiving its right to challenge the sufficiency of service, by appealing "all aspects" of the default judgment.

SUBSTANTIVE ISSUES
The crux of this case is whether Folger rebutted the presumption of validity accorded the sheriff's return. In resolving this issue, we find it necessary first to clarify the applicable burden of proof. Our starting point is the Legislature's declaration in La. C.C.P. art. 1292 that a sheriff's return "shall be considered prima facie correct." La. C.C.P. art. 1292.[6] Legislation using the term prima facie is generally accorded the weight of a rebuttable presumption. La. C.E. art. 308.[7] When *632 the predicate fact on which a presumption is based is established, the presumption serves to shift the burden of persuasion of the non-existence of the inferred fact to the opposing party. La. C.E. art. 308, Official Comment (b). The burden of persuasion is defined by La. C.E. art. 302 to mean:
The burden of a party to establish a requisite degree of belief in the mind of the trier of fact as to the existence or nonexistence of a fact. Depending on the circumstances, the degree of belief may be by a preponderance of the evidence, by clear and convincing evidence, or as otherwise required by law.
This article thus preserved the jurisprudential standards of proof. Keith B. Hall, Evidentiary Presumptions, 72 Tul. L.Rev. 1321, 1324 (1998).
Before Roper v. Dailey, 393 So.2d 85 (La.1980)(on reh'g), the jurisprudential burden of proof for rebutting the presumption of validity of a sheriff's return was by clear and convincing evidence. Roper v. Dailey, 400 So.2d 898 (La.1981)(on reh'g)(Dennis, J., dissenting). On rehearing in Roper, however, the Louisiana Supreme Court applied a preponderance of the evidence standard to annul a default judgment based on insufficiency of service of process. In so doing, the court reasoned that "[t]he plaintiff in a nullity action has the burden of proving his case by a preponderance of the evidence. There is a preponderance when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not." Roper, 393 So.2d at 88. The court found that while the testimony of the party attacking service, Roper, standing alone, may have been insufficient to tip the scales in his favor, the serving officer's testimony regarding the method he frequently used of making service indicated he "very well may not have served Roper personally." Id. The court further found it relevant that "as soon as Roper was notified of the default judgment, he employed counsel and took immediate action, and there are no other circumstances which raise inferences contrary to Roper's testimony." Id. The court thus concluded that viewing the evidence as a whole, "more probably than not, the serving officer did not serve the citation on Roper personally." Id.
Roper is the latest pronouncement on this issue by the Louisiana Supreme Court, and it stands for the proposition that the party attacking service "need only to establish the falsity by a preponderance of the evidence." Mariast & Lemmon, supra. at § 8.5; 2 Steven R. Plotkin, Louisiana Civil Procedure 503 (2002) (stating that "a party may attack the return and prove the falsity or incorrectness of service by a preponderance of the evidence.") However, Roper also stands for the proposition that the uncorroborated testimony of the party attacking service, standing alone, is probably insufficient to tip the scales in that party's favor. Mariast & Lemmon, supra. As a general rule, "the uncorroborated testimony of the person served is insufficient to rebut the prima facie presumption unless the person served proves that service was impossible." Plotkin, supra. Similarly, another court has noted that its "research has disclosed that in every case upholding the defendant's assertion that he was not served, the defendant's testimony was corroborated or the return was otherwise impeached." Polivka v. Worth Dairy, Inc., 26 Ill.App.3d 961, 328 N.E.2d 350, 356 (1 Dist.1974).
Applying these principles to the instant case, we conclude that Folger's evidence *633 was insufficient to rebut the presumption of prima facie validity accorded the sheriff's return. Although Folger introduced the testimony of three CT employees as well as two P & G employees, we find, as the Halls and TTC contend, that evidence was cumulative.[8] Given CT's status as Folger's agent for service of process, CT was the defendant who was served. The testimony of CT's employees was the testimony of the served defendant denying service. That testimony was not corroborated by any proof that the sheriff did not serve, or that it was impossible for him to have served, the Folger's petition on November 1, 1995.[9] To the contrary, CT kept no written record or log, by name, of what was in the bundle that Deputy Thompson delivered each morning. Instead, CT kept only a running tally on a legal pad of the number of services CT received each day, and that tally had been discarded.
Nor are we convinced by Folger's argument that the CT employees' searches of its computer database and Federal Express tracking records revealing no evidence of service of the Hall petition on CT were sufficient to establish the lack of service. Only after the bundle was opened and distributed among the CT employees each day was a computer entry made by a CT employee pursuant to the routine procedure outlined above. Hence, as the Halls and TTC contend, the Hall Suit citation and petition could have been misplaced some place between CT's "in" box and the desk of one of the five CT employees who worked in its Baton Rouge office. Likewise, only after a service was entered and a transmittal form printed was a Federal Express label prepared. As to the P & G office, it was even further removed. Moreover, the fact that P & G's business records reflect no service was received is not controlling on the issue before us. Service on CT is service on Folger regardless of whether P & G received it on Folger's behalf.
On the other hand, the sheriff's return, which is presumed to be prima facie correct, was supported by the entry in the Sheriff's Office log reflecting that the Hall Suit service documents were among those in the bundle Deputy McGee prepared for service on CT by Deputy Thompson on November 1, 1995. Although Folger argues that Deputy Thompson could have misplaced it, that argument overlooks the testimony that the bundle of multiple services was always secured by rubber bands so that none of them could come loose. Moreover, Deputy Thompson testified that he served CT with the Hall service in accord with his routine procedures. And *634 the record in the Hall Suit contains the return, which is presumed to be correct.
Folger argues that the presumption is not applicable in this case because Deputy Thompson did not contemporaneously stamp the return copy when he was present at CT's office. Continuing, Folger argues that Deputy Thompson's role was akin to a delivery person because all he did was drop off a bundle, which Deputy McGee prepared a day earlier, and routinely stamp the corresponding stack of returns a day or two later. That lack of a contemporaneously prepared return, Folger argues, is also the basis for distinguishing Classic Cabinets, Inc. v. All American Life Ins. Co., 978 P.2d 465 (1999), in which a default judgment was obtained against another CT customer. Folger stresses that the sheriff in Classic Cabinets detached and contemporaneously prepared the return while present in CT's office in Utah. That contemporaneous return, Folger argues, is the underlying basis for the presumption of validity of the return. Because Deputy Thompson did not make a contemporaneous return and because CT's employees testified that the sheriff's office makes mistakes in serving them,[10] Folger argues that the presumption is inapplicable.
Although we agree that Classic Cabinets is factually distinguishable, we disagree with Folger's argument that the presumption applies only when a return is contemporaneously prepared while service is being made. As the Halls and TTC point out, the Legislature does not require that sheriff officers prepare a contemporaneous return. Moreover, the jurisprudential basis for the presumption, which is codified in La. C.C.P. art. 1292, is not the contemporaneous preparation of the return, but rather that "the affirmative testimony of the official process server acting in the regular routine of duty without a motive to misrepresent must be preferred to the negative evidence of one claiming not to have been served, either for reasons of public policy or as a matter of probability." Hoffman v. Quality Chrysler Plymouth Sales, Inc., 706 S.W.2d 576, 580 (Mo.App. E.D.1986). Moreover, the presumption serves the purpose of avoiding the standoff that occurs in a case in which the party served simply says I was not served and the sheriff's return recites that the party was served. The presumption serves to end that standoff. Such is the case here.
We find the record reflects that the evidence at trial was very similar to the summary judgment evidence we considered in Folger I. As we noted in our earlier opinion, the summary judgment evidence showed that "Folger's evidence tends to show service was not made; the Hall's evidence tends to show service was made." Folger I, 97-2472, p. 5, 715 So.2d at 1226. The only additional evidence presented at trial was the testimony of the CT employees that they kept a running tally on a legal pad of the number of services CT received each day and that Ms. Belton reconciled the numerical count listed in that tally with the computer count at the end of each day. As we noted, that tally was disregarded when it was finished. We thus find that testimony insufficient to rebut the presumption that CT was served.
Given that both the East Baton Rouge Sheriff's Office and CT routinely handle a *635 large volume of services, that neither entity had a fool-proof record keeping system, and that neither entity knew for certain if service was actually made, we find the decisive factor to be the presumption of validity given the sheriff's return. As noted, the unrebutted presumption preponderates in favor of finding that service was made on CT, Folger's professional agent for service of process. We thus hold that the trial court was manifestly erroneous in finding that Folger rebutted the presumption and in annulling the default judgment.

FOLGER'S ANSWER
On May 24, 2002, Folger timely answered the appeals filed by the Halls and TTC, seeking to preserve its right to argue the issues preserved when its timely filed default judgment appeal was dismissed. That default judgment appeal was dismissed by an order of this court on April 11, 2002. On April 23, 2002, Folger applied for rehearing from that dismissal order. On May 2, 2002, we issued another order again dismissing as moot the default judgment appeal because the trial court had rendered judgment nullifying the default judgment. In that May 2nd Order, however, we expressly stated that "all issues in the above numbered and captioned appeal are preserved for the appeal of the judgment nullifying the earlier judgment." And, on May 20, 2002, we issued a per curiam stating that "[s]ince we have preserved for the parties the issues that may have been asserted in the appeal of the above numbered and captioned matter, we find no reason to disturb or modify our May 2, 2002 Order."
As a result, the only remaining appeals in this court are the two pending before us from the Nullity Action. In its answer to those appeals, Folger failed to brief any of the preserved issues from the default judgment appeal.[11] Under La. C.C.P. art. 2133 A, an appellee's answer "shall be equivalent to an appeal on his part." Ordinarily, we would find the failure of an appellee to brief an issue on appeal results in an abandonment of such issue. However, due to the unique, complex procedural history of this case, we find it appropriate to allow Folger the opportunity to brief the issues that were preserved when its timely default judgment appeal was dismissed.

DECREE
For the foregoing reasons, the judgment of the trial court nullifying the default judgment is reversed. Costs are assessed to Folger. Folger is given fifteen days from the date of this decision to brief the preserved issues pertaining to the default judgment appeal.
REVERSED AND RENDERED.
NOTES
[1] More precisely, the return contains two stamps on it; to wit: (1) a stamp that states the named defendant was served through CT by "handing said copy to Mary A. Belton, Assistant Secretary in person;" and (2) Deputy Thompson's signature stamp.
[2] These writ applications also involved an unrelated discovery issue.
[3] In her testimony, Ms. Belton stated that she attended this meeting with representatives of the East Baton Rouge Sheriff's Office, but all she could recall regarding the meeting was that a request was made on CT's behalf that it be served as early as possible each day due to CT's policy that "what's served today goes out today."
[4] This provision was in effect in 1996 when Folger filed its nullity action. The Legislature subsequently repealed this provision.
[5] La. R.S. 13:3471(5) provides:

The return of the serving officer on any citation or other legal process is conclusive, unless directly attacked. Such an attack may be made by rule in the action or proceeding, if made prior to judgment. If made after judgment, the return may be attacked only in a direct action to annul the judgment, which may be brought in the original action or proceeding.
[6] La.C.C.P. art. 1292 provides:

The sheriff shall endorse on a copy of the citation or other process the date, place, and method of service and sufficient other data to show service in compliance with law. He shall sign and return the copy promptly after the service to the clerk of court who issued it. The return, when received by the clerk, shall form part of the record, and shall be considered prima facie correct.
[7] La. C.E. Art. 308 provides:

A. Legislation providing that a document or other evidence is prima facie evidence or proof of all or part of its contents or another fact establishes a presumption under this Chapter. When, however, the content, context, or history of the legislation indicates an intention not to shift the burden of persuasion, such legislation establishes only an inference and in a jury case, the court on request shall instruct the jury that if it finds the existence of the predicate fact it may but need not find the inferred fact.
B. Other uses of the term "prima facie", such as those that merely provide for the admissibility of specified evidence, do not create presumptions or inferences and are not regulated by this Chapter.
[8] In so doing, however, we reject the Halls' and TTC's evidentiary argument that the trial court erred in overruling their objections to the relevancy of the evidence introduced by Folger at trial regarding the business records and general practices of P & G and CT regarding receipt of service of process. They argue that the only relevant question is whether the East Baton Rouge Sheriff's office served CT. If CT was served, they contend that service was proper regardless of whether CT actually transmitted it to Folger. A trial court's determination regarding admissibility of evidence will not be reversed absent clear error or abuse of discretion. Folse v. Folse, 98-1976, p. 11 (La.6/29/99), 738 So.2d 1040, 1046; Jones v. Peyton Place, Inc., 95-0574, pp. 11-12 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 763. Evidence is relevant if it "will tell the trier anything about what he or she needs to know." 1 Frank L. Mariast & Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 11.7 (1999). The trial court's finding that evidence of the entire service of process chain was relevant not clear error or abuse of discretion.
[9] Nor is this case analogous to Roper, supra, given this case involved service on a business entity.
[10] All three CT employees related various instances in which the East Baton Rouge Sheriff's Office made mistakes in serving CT. Particularly, Ms. Belton testified that those mistakes included: (i) delivering service papers to CT that were intended for another entity; (ii) attaching more than one service or other documents that should not be attached thereto; (iii) attaching more pages than necessary to a served document; and (iv) serving process with the returns still attached.
[11] On May 24, 2002, the same day it filed its answer, Folger also filed a Motion to Stay, which this court denied that day.