874 So.2d 216 (2004)
STATE of Louisiana, Through the DEPARTMENT OF SOCIAL SERVICES, OFFICE OF FAMILY SUPPORT, SUPPORT ENFORCEMENT SERVICES, in the Interest of Jessica Perdue, Minor Child(ren) of Vonda Richard
v.
Jason LANGLOIS.
No. 2003 CA 0849.
Court of Appeal of Louisiana, First Circuit.
March 3, 2004.
*217 Parris A. Taylor, Baton Rouge, for Appellant, State of Louisiana.
Mazie Toussaint Roberson, Baton Rouge, for Appellee, Jason Langlois.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
PARRO, J.
This is an appeal of a judgment annulling a default judgment for lack of proper service. We affirm.

FACTS
The State of Louisiana, through the Department of Social Services, Office of Family Support, Support Enforcement Services (the State), confirmed a default judgment against Jason Langlois in a support enforcement proceeding. Langlois later filed a petition for nullity, contending he was not served with the original petition to establish paternity and set child support. The sheriff's return of citation reflects domiciliary service on Langlois by delivering the citation and petition to his mother at 5011 Tristian Street in Baker, Louisiana, on March 21, 2000. Langlois admits he previously resided at that address, which is his mother's home, but contends he moved to his current residence on Teakwood Drive in Baker, Louisiana, in the early 1990s. After a hearing, the trial court determined that Langlois was not properly served with the petition in the enforcement proceeding and rendered judgment annulling the default judgment. The State appeals.

DISCUSSION
Absent an express waiver, citation and service are essential in all civil actions. LSA-C.C.P. art. 1201. A judgment rendered against a defendant who has not been served with process as required by law is an absolute nullity. See LSA-C.C.P. arts. 1201 and 2002; River City Fed. Sav. Bank (Cadle Co.) v. Video Assoc., Inc., 01-2453 (La.App. 1st Cir.11/8/02), 835 So.2d 781, 783-84, writ denied, 02-2966 (La.4/25/03), 842 So.2d 396. The plaintiff in a nullity action has the burden of proving his case by a preponderance of the evidence. There is a preponderance when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
A sheriff's return reflecting service is considered prima facie correct. LSA-C.C.P. art. 1292; see also LSA-R.S. 13:3471(5). While the recitation on the return of citation is presumed to be correct, the presumption is rebuttable. The party attacking it bears the burden of proving its incorrectness by a preponderance of the evidence. Roper v. Dailey, 393 So.2d 85, 88 (La. 1980)(on rehearing); Hall v. Folger Coffee Co., 02-0920 (La.App. 4th Cir.4/9/03), 843 So.2d 623, 632.[1] In general, *218 the uncorroborated testimony of the party attacking service, standing alone, is insufficient to rebut the presumption of prima facie correctness accorded the sheriff's return. Roper, 393 So.2d at 86; Hall, 843 So.2d at 632.
Domiciliary service is made when a proper officer leaves the citation or other process at the dwelling house or usual place of abode of the person to be served with a person of suitable age and discretion residing in the domiciliary establishment. LSA-C.C.P. art. 1234. Persons might list an address other than their actual dwelling house or place of abode for mailing or other purposes. Valid domiciliary service depends on the actual and true facts at the time of service and not on information furnished by the defendant at some time prior to service. Spinks v. Caddo-Bossier Services, Inc., 270 So.2d 604, 607 (La.App. 2nd Cir.1972).
In this case, the sheriff's return of service reflects that domiciliary service was effected on Langlois by leaving the citation and petition with his mother at the Tristian Street address. The State also submitted documents showing Langlois had renewed his driver's license three times since 1991, each time using the Tristian Street address. Hospital records in 2001 from Earl K. Long Hospital also show that address and bear his signature. A letter from the State, postmarked September 28, 2000, and addressed to him on Teakwood Drive, was returned with the notation, "Moved, Left no forwarding address."
Langlois testified that in late 1991 or early 1992, he moved to Teakwood Drive to live with his girlfriend, Debbie, and said he had lived there with her continuously ever since that time. Their seven-year-old daughter also lives there with them. He said that even when he left "to go stay at the camp or something," his "stuff always stayed" at the Teakwood residence. Langlois said he had previously lived with his mother at 5011 Tristian Street, but had not moved back or lived there at any time since the early '90s. According to Langlois, he only goes there to visit his mother. Langlois admitted that some "junk mail" for him still goes to his mother's address, and that he had never changed his address on his driver's license. Concerning the medical records from the hospital emergency room, Langlois pointed out that the handwriting on the top of the form, which showed his address as 5011 Tristian, was not his handwriting. An examination of that document confirms that he did not complete the address portion of any of the hospital forms. Langlois opined that whoever filled out those forms probably got the Tristian Street address from his driver's license. He could not explain why mail addressed to him on Teakwood Drive might have been returned.
In addition to his testimony, Langlois offered that of Kay Herrington. Herrington testified that she owns the house on Teakwood Drive, that Debbie had leased it from her sometime in the 1980's, and that Debbie had been her tenant at that address since that time. Herrington was certain that Langlois had lived on Teakwood Drive since shortly before Hurricane Andrew, which was when she first met him and was told by her tenant, Debbie, that he was now living there with her. Herrington testified that, "without a doubt," Langlois had lived there with Debbie consistently since the early '90s. She said she had seen him there on numerous occasions over the years when she stopped by to check on the house.
As the trial court noted, all the evidence of where Langlois actually resided *219 showed he lived in the house on Teakwood Drive. The State presented no testimony or other evidence to show he had actually lived at his mother's address at any time since 1991-92. An address provided on a written document does not establish a person's actual dwelling place for purposes of domiciliary service. We conclude, therefore, that by clear and convincing evidence, Langlois has overcome the prima facie presumption of correctness of the sheriff's return on service. Because the residence at 5011 Tristian Street was not his usual place of abode, domiciliary service on someone else living at that address was legally insufficient. Accordingly, the default judgment rendered against him was an absolute nullity, and the trial court was correct in so concluding.[2]

CONCLUSION
Considering the foregoing, the judgment of the trial court, which annulled the default judgment confirmed on May 10, 2000, is affirmed. Costs of this appeal, in the amount of $287.88, are assessed against the State.
AFFIRMED.
CARTER, J., dissents with reasons.
CARTER, C.J., dissenting.
I respectfully disagree with the majority's conclusion that Langlois overcame the prima facie correctness of the Sheriff's return of service. In particular, I disagree that all of the evidence of where Langlois actually resided showed that he lived in the house on Teakwood Drive. The record reflects that Langlois signed three driver's license renewals and several medical consent forms, all listing his address as 5011 Tristian Street. Moreover, a letter addressed to Langlois on Teakwood Drive and postmarked September 28, 2000, was returned with the notation, "Moved, Left no forwarding address."
There is strong circumstantial evidence that Langlois was purposefully and intentionally attempting to avoid service of process. It would be interesting to know what would have occurred if service had been attempted at the Teakwood Drive location. We know what occurred when mail was sent to him at that address. Further, it is interesting to note that Langlois did not call his girlfriend Debbie to testify.
Considering the record as a whole, including the documentary evidence, I do not believe that Langlois overcame the prima facie correctness of the Sheriff's return of service. Accordingly, I would reverse the judgment annulling the default judgment.
NOTES
[1] We note that a number of cases have stated that in order to overcome the presumption of correctness, the burden of proof is by clear and convincing evidence. See, e.g., Blue, Williams & Buckley v. Brian Investments, Ltd., 96-1451 (La.App. 1st Cir.6/20/97), 706 So.2d 999, writ denied, 97-2192 (La. 11/21/97), 703 So.2d 1311; Billiot Bros., Inc. v. Bercier, 447 So.2d 1090 (La.App. 1st Cir.1983). This was, in fact, the standard enunciated by the Louisiana Supreme Court in its original opinion in the Roper case. Roper, 393 So.2d at 85. However, on rehearing, the burden of proof used was a preponderance of the evidence. Roper, 393 So.2d at 88. The Fourth Circuit observed that this was the latest pronouncement on this issue by the Louisiana Supreme Court. Hall, 843 So.2d at 632. In the matter before us, this may be a distinction without a difference, as we conclude that the evidence presented by Langlois concerning his actual usual place of abode was clear and convincing, and thus satisfied his burden of proof under either standard.
[2] We also find no merit in the State's argument that Langlois's "voluntary" acquiescence in the judgment precludes his nullity action, pursuant to Louisiana Code of Civil Procedure article 2003. The record shows Langlois was picked up on a bench warrant, after which he agreed to paternity tests and paid child support. Acquiescence in an absolutely null judgment to avoid contempt or criminal proceedings is not "voluntary." See Ray v. South Central Bell Tel. Co., 315 So.2d 759, 762 (La.1975).