874 So.2d 90 (2004)
Roy W. HALL and Helen Hall
v.
The FOLGER COFFEE COMPANY and XYZ Insurance Company.
The Folger Coffee Company
v.
Roy W. Hall and Helen Hall.
No. 2003-C-1734.
Supreme Court of Louisiana.
April 14, 2004.
Rehearing Denied June 25, 2004.
*93 Jennifer M. Caulfield, Dominic J. Gianna, Marianne Garvey, Middleberg, Riddle & Gianna, New Orleans, for Applicant.
Marsha B. Higbee, Ford J. Dieth, New Orleans for Respondent.
Thomas A. Usry, John F. Weeks, II, New Orleans, for amicus curiae Louisiana Sheriff Association.
Peter C. Rizzo, for amicus curiae Paul R. Valteau, Jr.
CALOGERO, Chief Justice.
At issue in this writ application is whether the court of appeal properly reversed the district court's factual finding that the evidence presented by Folger Coffee Co., the plaintiff in this nullity action, that its agent for service of process, CT Corporation, was not properly served with process of the petition, was sufficient to rebut the presumption of validity afforded a completed sheriff's return of service under La.Code of Civ. Proc. art. 1292. Finding that the court of appeal improperly substituted its own judgment for the judgment of the district court, we reverse the judgment of the court of appeal. Accordingly, we reinstate the judgment of the district court, which had annulled the default judgment rendered in favor of defendants, Roy W. and Helen Hall, against plaintiff, Folger Coffee Company.

FACTS AND PROCEDURAL HISTORY
On October 10, 1995, the Halls filed a personal injury action in Civil District Court for Orleans Parish against Folger, seeking recovery of damages allegedly resulting *94 from a November 15, 1994, accident that occurred when Mr. Hall fell from a platform at Folger's warehouse in New Orleans while delivering coffee cans in the course of his employment with another company.[1] The Halls' petition included a request that Folger be served "through the Agent for Service of Process, CT Corporation Systems, 8550 United Plaza Blvd., Baton Rouge, LA. 70809." Although CT claims that the petition was never served, the East Baton Rouge Parish Sheriff's Office completed a return on service indicating that service was made on CT Corporation by "handing said copy to Mary Belton, Assistant Secretary, in person," on November 1, 1995; the service return is signed by East Baton Rouge Parish Deputy Harvey Thompson, a 17-year process server in the Civil Process Department. The return was mailed to the clerk of the Civil District Court in Orleans Parish, as required by La.Code of Civ. Proc. art. 1292,[2] and thereafter became a part of the record.
After Folger failed to timely file an answer or other responsive pleadings, the district court entered a preliminary default judgment against Folger on January 24, 1996, as allowed by La.Code of Civ. Proc. art. 1701(A).[3] The default was confirmed on July 15, 1996, when the district court entered judgment on behalf of the Halls. Mr. Hall was awarded $910,572.70 in damages, while Ms. Hall was awarded $45,000 for loss of consortium. The default judgment was mailed to Folger, through its agent for service of process, CT Corporation, by the clerk of Civil District Court, as allowed by La.Code of Civ. Proc. art. 1913(C).[4] CT Corporation notified Folger of the default judgment, then sent the default judgment to Folger's parent corporation, Proctor and Gamble, by Federal Express.
Following its receipt of the default judgment on August 1, 1996, Folger filed a motion for suspensive appeal and posted the required appeal bond.[5] Thereafter, *95 Folger filed a Nullity Action under the provisions of La.Code of Civ. Proc. art. 2002(A)(2), which provides as follows:
A. A final judgment shall be annulled if it is rendered:
* * * * *
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
The basis for Folger's Nullity Action was its claim that service of process was never served on CT Corporation. Folger filed a motion for summary judgment making that assertion. That motion was granted by the district court. However, the summary judgment was reversed by the court of appeal, which found a genuine issue of material fact regarding the pivotal issue related to whether service of process had been properly effected on Folger through CT Corporation.[6]
Following the remand of the case to the district court, the Halls, joined later by T.T.C., filed peremptory exceptions of no cause of action and no right of action, arguing that Folger had made a general appearance on August 21, 1996, when it filed its Motion for Suspensive Appeal of the default judgment in the district court, seeking review of "all aspects" of the judgment. Under the provisions of La.Code of Civ. Proc. art. 2002(A)(2), quoted above, a party that has made a general appearance is not entitled to a judgment of nullity. The district court overruled those exceptions. The court of appeal denied writs filed by the Halls and T.T.C on that issue.[7] This court thereupon denied the request for stay and for supervisory writs filed by the Halls and T.T.C.[8]
Following a bench trial, the district court entered judgment in the Nullity Action in favor of Folger, nullifying the default judgment and giving as its written reasons the legal argument portion of Folger's post-trial memorandum,[9] which argued *96 that the proven facts, coupled with applicable law, supported Folger's position at the trial of the case. The Halls and T.T.C. appealed the judgment that annulled the Halls' default judgment. The court of appeal reversed, concluding as follows:
Given that both the East Baton Rouge Sheriff's Office and CT routinely handle a large volume of services, that neither entity had a fool-proof record keeping system, and that neither entity knew for certain if service was actually made, we find the decisive factor to be the presumption of validity given the sheriff's return. As noted, the unrebutted presumption preponderates in favor of finding that service was made on CT, Folger's professional agent for service of process. We thus hold that the trial court was manifestly erroneous in finding that Folger rebutted the presumption and in annulling the default judgment.
Hall v. Folger Coffee Co., XXXX-XXXX, p. 19 (La.App. 4 Cir. 4/9/03), 843 So.2d 623, 634-35. We granted Folger's writ application to consider whether the court of appeal correctly overturned the district court's decision, which had nullified the default judgment. Hall v. Folger Coffee Co., XXXX-XXXX (La.10/17/03), 855 So.2d 744.

PROCEDURE FOR DETERMINING VALIDITY OF SERVICE OF PROCESS
Under the provisions of La.Code of Civ. Proc. art. 1292, a sheriff's return of service of process "shall be considered prima facie correct." The impact of that statement is explained by reference to the provisions of La.Code of Evidence, Chapter 3, "Effect in Civil Cases of Presumptions and Prima Facie Evidence." According to that chapter, "[l]egislation providing that a document or other evidence is prima facie evidence ... establishes a presumption under this Chapter."[10] "Presumption" is defined as "an inference created by legislation that the trier of fact must draw if it finds the existence of the predicate fact unless the trier of fact is persuaded by evidence of the nonexistence of the fact to be inferred."[11] The only presumptions regulated by Chapter 3 of the La.Code of Evidence "are rebuttable presumptions [that] therefore may be controverted or overcome by appropriate evidence."[12] "If the trier of fact finds the existence of the predicate fact, and if there is evidence controverting the fact to be inferred, it shall find the existence of the inferred fact unless it is persuaded by the controverting evidence of the nonexistence of the inferred fact."[13]
The rule that may be extracted from reference to all of the above provisions is stated in Official Comment (b) to La.Code of Evid. 308, which states that "[w]hen the predicate fact is established it shifts the burden of persuasion of the non-existence of the inferred fact to the opponent." The phrase "burden of persuasion" is defined as "the burden of a party to establish a requisite degree of belief in the mind of the trier of fact as to the existence or nonexistence of a fact."[14] The "degree of belief required "may be by a preponderance of the evidence, by clear and convincing evidence, or as otherwise required *97 by law."[15] According to this court's most recent pronouncement on the subject, the burden of persuasion that applies to a party seeking to overcome the rebuttable presumption afforded a completed sheriff's return of service by La.Code of Civ. Proc. art. 1292 is preponderance of the evidence. Roper v. Dailey, 393 So.2d 85 (La.1981). Accordingly, the party attacking service must prove that, more probably than not, proper service was not made. Id., 393 So.2d at 88.
Consideration of all of the above principles reveals the following method for determining a Nullity Action based on insufficient service of process:
1. The trier of fact must determine the existence of the "predicate fact"i.e., whether the record contains a completed sheriff's return of service.[16]
2. If the predicate fact exists, the trier of fact must draw the inference created by the legislaturei.e., that the sheriff's return of service is valid.[17]
3. The party attacking the validity of the sheriff's return of service must be allowed to present "appropriate evidence" to controvert or overcome the presumption created by the first two steps.[18]
4. The trier of fact must determine whether it is persuaded by the controverting evidence of the nonexistence of the inferred fact.[19]
5. If the trier of fact is not persuaded by the controverting evidence of the nonexistence of the inferred fact, it must find the existence of the inferred fact.[20]
6. If, based on a preponderance of the evidence, the trier of fact is persuaded by the controverting evidence of the nonexistence of the inferred fact, it may find that the inferred fact does not exist.[21]
The record in the instant case indicates that the district court properly applied the rebuttable presumption of validity afforded the completed sheriff's return. Following a trial on the merits, the district court found that the evidence presented by Folger was sufficient to overcome the presumption. In effect, the district court's judgment is based on her being persuaded by the controverting evidence presented by Folger of the non-existence of the inferred factthe latter being that service had been properly made on CT Corporation. Accordingly, the district court annulled the default judgment against Folger. The court of appeal's reversal is based on its review of the record evidence and its conclusion that the presumption of validity should be the "decisive factor" since neither the sheriff's office nor CT Corporation had proven "a fool-proof record keeping system." The court of appeal found that Folger did not present sufficient evidence to overcome the presumption of validity because it failed to prove that it was "impossible" for service to have been made.
Folger raises three assignments of error on appeal: (1) that the evidence it presented at trial was sufficient to overcome the presumed validity of the sheriff's return by a preponderance of the evidence; (2) that the court of appeal misapplied the burden of proof in direct contravention of law established by this court, and (3) that the *98 court of appeal improperly performed an unwarranted de novo review. Because determination of the appropriate appellate standard of review is critical to our consideration of the other issues raised by Folger, we will address the last of Folger's assignments of error first.

STANDARD OF REVIEW
The court of appeal opinion in this case does not expressly discuss the standard of review that it would apply to the district court's findings in this case, although it does conclude by stating that "the trial court was manifestly erroneous in finding that Folger rebutted the presumption and in annulling the default judgment." Folger argues that the court of appeal actually performed a de novo review of the evidence in its opinion.
In civil cases, the appropriate standard for appellate review of factual determinations is the manifest errorclearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Cenac v. Public Access Water Rights Ass'n, 2002-2660, p. 9, (La.6/27/03),851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. Id. The reviewing court should affirm the district court where the district court judgment is not clearly wrong or manifestly erroneous. Id. at 9-10, 851 So.2d at 1023.
Reference to the provisions of the Louisiana Code of Evidence quoted above clearly reveals that determination of whether a party challenging the validity of a sheriff's return of service has presented sufficient evidence to rebut the presumption is a factual question, as those articles refer repeatedly to "predicate facts" and "inferred facts" and expressly leaves the decision of whether the party attacking the presumption has presented sufficient evidence to overcome the presumption to the factfinder. Because the only issue in this case is a factual one, we find that the appropriate standard of review is the manifest error standard.
We further find that the court of appeal's rote recitation of the phrase "manifestly erroneous" does not end this court's inquiry as to whether the court of appeal applied the correct standard of review. In fact, both parties argue that the court of appeal applied the de novo standard of review. The Halls argue that the de novo standard was the correct standard to be applied to this case. They assert that the district court committed legal errors that properly triggered the use of that standard of review. However, the only question before the district court was a factual questioni.e., whether Folger submitted sufficient controverting evidence to persuade the trier of fact of the non-existence of the inferred fact that CT Corporation was properly served with service of process. The manifest error standard of review applies to all factual findings, including the district court's factual finding in this case that the evidence presented by Folger proved, more likely than not, that the Halls' original petition was never properly served on CT Corporation.
We are aware of the position of the dissenting justices that a "sufficiency of the evidence" challenge involves a legal question to which the de novo standard of review should be applied. It should be noted however that this court has already rejected that argument in Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216 and, more recently, by unanimous vote in Nabors Drilling USA v. Davis, XXXX-XXXX *99 (La.10/21/03), 857 So.2d 407, 416. In both of those cases, this court held that the manifest error standard of review applies to all factual findings, including sufficiency of the evidence challenges. We acknowledge, however, the well-established principle of Louisiana law that legal sufficiency of the evidence challenges, such as those presented by motions for summary judgment, motions for directed verdict, and motions for judgment notwithstanding the verdict, are subject to the de novo standard of review that is used for all legal issues.
With the manifest error standard of review in mind, we note that the parties presented conflicting evidence on the pivotal issue in this case, as further detailed below. In such circumstances, one of the basic tenets of the manifest error standard of review is that "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the court of appeal is convinced that had it been the trier of fact, it would have weighed the evidence differently." Parish Nat. Bank v. Ott, XXXX-XXXX (La.2/25/03), 841 So.2d 749, 753. This principle is further explained in Ott as follows:
This court has announced a two-part test for the reversal of the factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong but whether the factfinder's conclusion was a reasonable one.... The reviewing court must always keep in mind that if the trial court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.
Id. at 753-54, quoting Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
Nothing in the court of appeal decision in this case indicates that it found that the record does not contain a reasonable factual basis for the district court's conclusion that the evidence presented by Folger rebutted the presumptively valid completed sheriff's return of service. In the absence of such a finding, the court of appeal had no basis for reversing the district court judgment. Accordingly, we will review the evidence presented by the parties to determine (1) whether a reasonable factual basis exists for the district court's findings and (2) whether those findings are manifestly erroneous.

CONTROVERTING EVIDENCE PRESENTED BY FOLGER
In its first assignment of error, Folger claims that it overcame the presumed validity of the sheriff's return by a preponderance of the evidence.[22] At trial *100 of this matter, Folger presented the testimony of three CT Corporation employees[23] who worked at the Baton Rouge office: Mary Belton, office manager; Jenny Fitch, special assistant secretary; and Shawna Smith, fulfillment specialist. All three CT Corporation employees testified to the procedures routinely used to process documents served on CT Corporation as agent for service of process for numerous entities.
The testimony indicated that a bundle of service documents, none of which had return of service forms attached, were delivered to CT Corporation at approximately 9 a.m. each morning. The first CT Corporation employee to arrive each morning, which, Ms. Belton testified, was usually Ms. Fitch, received the bundle of service documents, which she unbundled and counted. The number of service documents in the bundle would then be recorded on a legal pad; that number would be updated throughout the day as other service documents were received from other sources. Immediately after receipt, the service documents would be divided among the CT Corporation employees who would be responsible for processing them during the day. The employees then processed the service documents, eventually preparing the documents to be sent to the entities to whom they were directed, usually through Federal Express, which picked up the service documents at the end of each work day. The step-by-step procedures used to process the service documents required the CT Corporation employees to verify that the entity to which the service documents were directed were CT Corporation customers, then to activate a delivery instruction computer screen, and finally to activate a "transmittal screen," which would generate a transmittal letter that was included in the package with the documents.
Because of these procedures, all service documents were entered into CT Corporation's computer system, the employees asserted. At the end of the day, the number of services processed in the computer was reconciled with the number of services delivered to the company, as indicated by the running tally kept on the legal pad. Both Ms. Belton and Ms. Fitch testified that, when CT Corporation received the default judgment in this case, they searched CT Corporation's computer database and found no evidence that the Halls' original petition had been received in the CT Corporation office, or that the petition had been served on CT Corporation.
Ms. Belton also testified to "mistakes" made by the East Baton Rouge Sheriff's Office related to the delivery of original service documents to CT Corporation. According to Ms. Belton, CT Corporation has received papers not intended for the company, has received service documents that *101 had not been separated from other service documents, and has received the sheriff's return of service attached to service documents. Sometime after November 1, 1995, Ms. Belton said, the East Baton Rouge Sheriff's Department changed the method of service of process on CT Corporation and started providing a printout of the service documents allegedly included in the packet. Prior to the time the sheriff's office started including that printout, there was no way for CT Corporation to confirm that it had received all the service documents it was supposed to have received on any given day, Ms. Belton noted. Following that time, CT Corporation has received bundles of service documents that did not include all the documents listed on the printout, as well as bundles that included service documents not listed on the printout, she said. On cross-examination, Ms. Belton admitted that CT Corporation itself has also made mistakes, such as sending service documents to addresses that are no longer current and accepting service documents for a company for which it does not serve as agent for service of process.
The record also contains evidence of the procedures used by the East Baton Rouge Sheriff's Office to process service documents. Although that testimony was presented at trial by the Halls, Folger claims that that testimony, of the sheriff's office employees, ultimately supports Folger's position that, more likely than not, the petition was never served on CT Corporation. Pursuant to the procedures in place in 1995, a specific deputy in the Civil Process Department of the East Baton Rouge Parish Sheriff's Office, Deputy Nora McGee, was assigned to process the requests for service directed to CT Corporation as agent for service of process for various entities. At the time of the alleged service in this case, Deputy McGee had only worked in the Civil Process Department for about two months, she stated by deposition. The procedures she used were the ones in place when she started working in that department, she said. Deputy McGee testified that she and the deputy assigned to compile the service requests going to the Secretary of State's office would open the mail in the morning, and separate the requests that were going to CT Corporation from those going to the Secretary of State and from other "regular services."
Thereafter, Deputy McGee would take the service requests going to CT Corporation and process the checks sent to pay for the service by the various parishes requesting service of documents. She then took the service requests in the order of parishes and stamped them with a clock. After they had all been stamped, she would separate the original service documents from the return of service documents, then count both stacks to be sure she had the same number of documents in each stack. Deputy McGee admitted that she rarely checked the stack of original service documents against the stack of return of service documents once they were separated. After counting both stacks, she would place all the original service documents directed to CT Corporation into one bundle, which she would secure with rubber bands vertically and horizontally so that nothing could fall out. Finally, she typed a list of the documents on a ledger page, using the return of service documents as a guide. The list indicated the parish that sent the documents, the party to be served, the suit number, and the check number. Deputy McGee confirmed Ms. Belton's testimony that, sometime after the alleged date of service in this case, November 1, 1995, the sheriff's department got computers and started preparing the list by computer. A copy of the computerized list was then included at the top of the bundle of service documents sent to *102 CT Corporation, she said. Deputy McGee testified that she had earlier asked why a copy of the list on the ledger sheet was not sent to CT Corporation along with the original service documents, but that she was told that was not part of the procedure.
According to Deputy McGee, the bundle of original service documents would not be disturbed once it had been secured with rubber bands except on the rare occasions when she discovered a problem as she was typing up the list. After she typed the list, she bundled up the return of service documents and secured the bundle horizontally and vertically with rubber bands, in the same manner as the bundle of original service documents was secured. The bundle of original service documents would be given to Deputy Thompson for delivery to CT Corporation the next morning. The bundle of return of service documents would be placed in Deputy Thompson's basket at the East Baton Rouge Parish Sheriff's Office to be completed at a later date. Deputy Thompson described virtually the same procedure in his deposition testimony, saying that he has had to perform the job described by Deputy McGee from time to time and that everyone in the Sheriff's Office does it the same way.
Deputy McGee admitted that CT Corporation sometimes received original service documents that it was not supposed to receive, but said it happened only very rarely, usually because the parish sending the documents misdirected them to CT Corporation. When that occurred, CT Corporation sent the documents back to Deputy McGee, who then modified her typed list to reflect the fact that CT Corporation should not have received the documents, at which time the return of service documents for those documents would be removed from the bundle of documents to be completed by Deputy Thompson. Unless that happened, Deputy McGee testified that she never removed anything from the bundle of service returns that she had placed in Deputy Thompson's basket.
Deputy Thompson testified by deposition that he would pick up the bundle of service documents directed to CT Corporation from Deputy McGee every morning.[24] He would then take the bundle and deliver it to an employee at the CT Corporation without opening it or looking to see what documents the bundle contained. According to Deputy Thompson, the policy at the East Baton Rouge Parish Sheriff's Office was to leave all return of service documents at the office, not to leave them attached to the original service documents before they were served. According to the log kept by the Sheriff's Office, he served 57 documents on CT Corporation on November 1, 1995, Deputy Thompson said.
At some point either the day after service was made or the day after that, back at the sheriff's office, Deputy Thompson would sign the sheriff's return of service documents, indicating that he had served each of the documents on CT Corporation. According to Deputy Thompson, the reason for the delay in completing the return of service documents was to give CT Corporation an opportunity to go through everything and see if the addresses were correct and if they had properly been served with the original service documents. He completed the return of service documents by stamping them with a stamp that read: "CT CORPORATION, by Mary Belton," then stamping them with his individual signature stamp. Although *103 the stamp indicates that the original service documents were served on Ms. Belton, Deputy Thompson said that it was his understanding that documents often were served on any employee of a business to which they were directed. So long as the employee does not say that he or she cannot receive service, the process servers gave it to "whomever," he said. Once the return of service documents had been stamped, they were mailed by the sheriff's office to the parishes where they originated, Deputy Thompson said.
After the sheriff's department started sending the log detailing the original service documents purportedly contained in the bundle prepared by Deputy McGee,[25] CT Corporation would check the bundle and confirm that all of the documents listed were actually in the bundle it received. Deputy Thompson would then pick up the log and file it in the sheriff's department along with the original log sheet. Deputy Thompson testified that, at the time his deposition was taken, he did not complete return of service documents until after CT Corporation had confirmed that all the original service documents on the list had actually been delivered.[26] Deputy Thompson said that he has a "rule" that he will not complete a return of service document until CT Corporation has confirmed that the documents had actually been served. The list is used to confirm that all the returns are correct, he said.
Deputy Raymond Antoine, supervisor of the Civil Process Division of the East Baton Rouge Sheriff's Department at the time of trial and assistant supervisor on November 1, 1995, generally described the same "standard office procedure" summarized above during his live testimony at trial. Further, both Deputy Bennet and Deputy Raymond Antoine, assistant supervisor of the Civil Service Department of the East Baton Rouge Sheriff's Office on November 1, 1995, who testified by deposition, described a meeting they had with representatives of CT Corporation that occurred when CT Corporation moved to Baton Rouge from New Orleans. During that meeting, the procedures used to deliver service documents to CT Corporation were discussed and the described system was adopted without objection from CT Corporation representatives, Deputies Bennet and Antoine said. CT Corporation did not ask during that meeting for any special list of the services delivered to their office, Deputy Antoine said.
Deputy Antoine also testified that the returns of service documents never leave the sheriff's department in East Baton Rouge Parish and that none of the deputies making service complete the returns contemporaneously with the delivery. He further stated that, after CT Corporation questioned whether the Halls' original petition had ever been served in this case, the sheriff's office started sending a roster listing the services contained in the bundle when it was delivered to CT Corporation. The decision to send the list was made by the sheriff's office, without a request from CT Corporation, Deputy Antoine said.
*104 Deputy Antoine also admitted that the stamped return of service on all documents served on CT Corporation would say that they were served on Ms. Belton, even if Ms. Belton was not in the CT Corporation office at the time service was made, pursuant to CT Corporation's instructions to the sheriff's office.
As Folger points out, Deputy Thompson's testimony clearly reveals that he did not know, even at the time he delivered the bundle of service documents to CT Corporation on November 1, 1995, whether that bundle contained the plaintiffs' petition in this case. Accordingly, Folger argues that Deputy Thompson's return of service, essentially a recitation that he had made personal service of a given document on a particular CT Corporation employee, if not simply an unsupportable assertion, is meaningless.
Our review of the record evidence convinces us that the district court did not commit manifest error when she found, on the facts presented, that, more likely than not, service was never effected on Folger through CT Corporation. The district court judgment annulling the default judgment herein indicates that the district court was persuaded by Folger's controverting evidence of the non-existence of the inferred fact. The district court thus found that Folger's evidence rebutted the presumption of validity afforded to the completed sheriff's return on service. We cannot say, on the basis of our review of this record, that no reasonable factual basis exists for the district court's finding in that regard, and that the district court's decision was manifestly erroneous.
The record evidence is clear that Deputy Thompson did not know whether he delivered the Halls' original petition to CT Corporation on November 1, 1995. The record evidence is also clear that Deputy Thompson's statement on the return of service that he delivered the Halls' petition personally to Mary Belton is suspect, as Ms. Belton testified that Ms. Fitch usually received the bundle of documents and Deputy Thompson testified to his belief that any employee of a business could receive service. Further, Deputy Thompson had no specific recollection of the identity of the person who received the bundle on November 1, 1995. We also note the testimony from Ms. Belton regarding the "mistakes" made by the sheriff's department in making service on CT Corporation, both before and after the sheriff's department started including a printout of the documents allegedly contained in the bundle, including the omission of documents allegedly included. Accordingly, we find that the court of appeal improperly reversed the district court decision. We therefore reverse the court of appeal judgment and reinstate the district court's judgment, which had annulled the default judgment.
We note that this decision is based on our finding that the district court's factual findings in this case were not manifestly erroneous. The court of appeal improperly focused on Folger's inability to prove that service was impossible and upon the evidence that, in its view, proved that neither the sheriff's office nor CT Corporation had a "foolproof record keeping system." However, Folger was not required to prove that CT Corporation's systems were foolproof in order to fulfill its burden of overcoming the statutory presumption of validity afforded the completed sheriff's return by a preponderance of the evidence. Folger was only required to submit evidence sufficient to convince the trier of fact that proper service had not been made. The trial court's factual finding that Folger presented sufficient evidence to overcome the presumption by a preponderance of the evidence is *105 entitled to deference under the manifest error standard that applies to this case.
Finally, we agree with Folger's second assignment of error, in which it asserts that the court of appeal misapplied the burden of persuasion in this case by essentially requiring Folger to prove insufficiency of service beyond all doubt. As pointed out by Folger, the court of appeal specifically recited the fact that "neither entity knew for certain if service was actually made" in support of its conclusion that "the presumption of validity given the sheriff's return" was the "decisive factor" in this case. Hall, XXXX-XXXX at p., 843 So.2d at 634. Further, the court of appeal essentially held that a party can overcome the presumption of validity of a completed sheriff's return of service only by proving that it was impossible for service to have been made.
Prior to this court's decision in Roper, the standard applied to determine whether a party had sufficiently rebutted the presumption of validity afforded a completed sheriff's return of service was "clear and convincing." However, this court imposed only a "preponderance of the evidence" standard in Roper. 393 So.2d at 88. Since Roper, the party attacking service must only prove that, more likely than not, service was not properly made. Id. Thus, the court of appeal should not have required that Folger show "for certain" that the service was not made, or show that it was impossible for service to have been made. So long as the district court assessing the evidence is satisfied that the party challenging the validity of service has shown by a preponderance of the evidence that service was not properly made, a default judgment may be declared absolutely null under La.Code of Civ. Proc. art. 2002(2). Further, in the absence of manifest error in the district court's finding on that issue, an appellate court may not reverse.

DECREE
The decision of the court of appeal is reversed, and the district court judgment annulling the default judgment in favor of the Halls and against Folger is reinstated.
COURT OF APPEAL REVERSED; DISTRICT COURT JUDGMENT ANNULLING DEFAULT JUDGMENT REINSTATED.
KIMBALL and KNOLL, JJ., dissent & assign reasons.
TRAYLOR, J., dissents for reasons assigned by KIMBALL, J.
KIMBALL, Justice, dissenting.
Because I believe the majority has misstated the law and mischaracterized the evidence presented in this case, I dissent from its conclusion that the default judgment against Folger should be annulled. The majority's analysis in this case hinges on its conclusion that "determination of whether a party challenging the validity of a sheriff's return of service has presented sufficient evidence to rebut the presumption is a factual question...."[1] Op. at p. 98. The established jurisprudence of this court, however, clearly reveals the manifest error analysis employed by the majority is faulty.
At its heart, this case involves the issue of whether Folger submitted sufficient evidence to rebut the statutory presumption that the sheriff's return, which indicated proper service on Folger's agent for *106 service of process, is correct. In the instant case, a fair reading of the record shows that the underlying facts are undisputed. Neither CT Corporation's employees nor sheriff's office employees had any explicit memory of whether the particular service documents at issue had actually been made or received. Instead, the testimony presented by both sides concerned the regular procedures followed in the offices of both CT Corporation and the sheriff concerning the receipt and service of service documents, respectively. Neither party alleged that the regular procedures had not been followed with respect to the service documents at issue. Thus, while the parties disagreed on the ultimate issue to be determined, the evidence presented was, contrary to the opinion of the majority, essentially undisputed.[2]
The question of whether the presumption was rebutted in this case is a legal one rather than a factual one. That is, in light of the undisputed nature of the evidence presented in this case, the resolution of the issue presented is undoubtedly an issue of law and, as such, requires de novo review by this court. In cases such as this, sufficiency of the evidence is a question of law, not one of fact. See Charbonnet v. Gerace, 457 So.2d 676, 679 (La.1984) ("[S]ufficiency of the evidence is always a question of law."); Gagnard v. Allstate Ins. Co., 338 So.2d 1156 (La.1976) (Calogero, J., dissenting from writ denial ("Sufficiency of the uncontroverted circumstantial evidence in this case presents a question of law.")).
On original hearing in Carter v. Avondale Shipyards, Inc., 415 So.2d 174, 175 (La.1981), a case involving a dispute between successive employers over liability for workers' compensation benefits when plaintiff suffered total and permanent disability caused by silicosis, we explained that sufficiency of the evidence is a question of law, not of fact, when the evidence before the trial court is undisputed. In such a case, the trial court does not truly perform a credibility function and, instead, simply resolves the issue as a matter of law. On appellate review in these cases, the manifest error standard is not applicable as there is no determination of credibility made by the trial court. The majority on original hearing explained that when conflicting evidence is presented, the factual determinations of the trial court are accorded great weight, and the reviewing court determines sufficiency by viewing the evidence in the light most favorable to the prevailing party and then determining whether the evidence, viewed in that light, is sufficient. This court subsequently granted rehearing to re-examine the important issue of whether liability for plaintiff's compensation benefits should be apportioned between successive employers. On rehearing, the original decision of the court was vacated on grounds unrelated to the standard of review, and the issue of the applicable standard of review was not re-visited. However, a reading of the decision on rehearing indicates that the majority conducted a de novo review of the evidence presented to determine whether the evidence presented by plaintiff was sufficient to establish by a preponderance of the evidence that his exposure to silica particles at his previous employment caused him to contract silicosis and become disabled.
In any case and regardless of the precedential value to be given the Carter opinion *107 on original hearing, the rationale for viewing sufficiency of the evidence as an issue of law when the pertinent evidence is undisputed is simply logical. The majority in this case points to the cases of Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099 (La.7/5/94), 639 So.2d 216 and Nabors Drilling USA v. Davis, 03-0136 (La.10/21/03), 857 So.2d 407 for the proposition that "the manifest error standard of review applies to all factual findings, including sufficiency of the evidence challenges." Op. at p. 98.
Nabors Drilling was a workers' compensation case that dealt with the issue of whether a claimant forfeited his benefits because he failed to answer truthfully his employer's medical history questionnaire concerning a prior injury. The workers' compensation hearing officer determined that the employer failed to prove its case and dismissed the employer's demand seeking to terminate claimant's benefits. The court of appeal reversed. On review, this court reversed the judgment of the court of appeal, finding the employer did not prove each element of its case as required by statute. In reaching this determination, we stated, "We review the factual conclusions of the workers' compensation judge, including those relating to the sufficiency of the evidence, for manifest error." Nabors Drilling, 03-0136 at p. 10, 857 So.2d at 417. This statement is correct to the extent it applies the manifest error standard of review to factual determinations that factor into the determination of sufficiency of the evidence. However, it should not be read so broadly as to stand for the blanket proposition that sufficiency of the evidence is a factual determination that is itself subject to the manifest error standard of review.
Ambrose involved a wrongful death and survival action against two New Orleans Police Department emergency technicians. At issue in the case was a statute that provided defendants with limited immunity from civil damages such that plaintiffs were required to prove not that defendants' actions were merely negligent, but that defendants' actions or omissions were grossly negligent. The jury found that defendants' actions were grossly negligent and awarded damages to plaintiffs. Although this court thoroughly discussed the applicability of the manifest error standard of review to the facts of the case, a reading of the case seems to show that the majority actually engaged in the type of analysis suggested above by the Carter opinion on original hearing. That is, the majority reviewed the evidence presented, but evaluated it in the light most favorable to the plaintiffs, who prevailed in the trial court. However, even upon evaluation in the light most favorable to the plaintiffs, the majority concluded that the evidence was not sufficient to rise to the level of gross negligence. For example, the majority stated, "Even if we concede the worst-case scenario for defendantsthat they were at the Ambrose house for twenty minutesit does not mandate a finding of gross negligence in favor of plaintiffs." Ambrose, 93-3099 at p. 11-12, 639 So.2d at 222. The majority concluded:
The actions of the EMTs do not exhibit willful, wanton, or reckless conduct amounting to "complete neglect of the rights of others," nor an "extreme departure from ordinary care," nor the "want of even slight care." The decision of the jury and the corresponding judgment of the trial court, finding [defendants] guilty of gross negligence, was clearly wrong.
For the above reasons, we conclude that plaintiffs did not meet their burden of proof at trial that [defendants] committed gross negligence in their care of Wilton J. Ambrose, Jr.
*108 Id. at p. 13, 639 So.2d at 223. Thus, the analysis employed by the majority appears to be one that gives great deference to the factual findings of the jury, but then evaluates these factual findings de novo to determine whether they are legally sufficient to satisfy a gross negligence standard. This issue was considered to be so important by the members of this court that three Justices, including this author, concurred to point out that the determination of sufficiency of the evidence is a legal issue.
While the disagreements explained above may seem to be an issue of semantics with no practical distinctions, the majority's opinion in the instant case illustrates the fallacy of this position. The majority candidly states, "We note that this decision is based purely on our finding that the district court's factual findings in this case were not manifestly erroneous.... The trial court's factual finding that the Halls presented sufficient evidence to overcome the presumption by a preponderance of the evidence is entitled to deference under the manifest error standard that applies to this case." Op. at pp. 104-05. Presumably, if the district court had made a "factual finding" that the evidence presented by the Halls was insufficient to overcome the presumption, the majority would reach the opposite result. However, these "factual findings" so heavily relied upon by the majority are clearly and traditionally questions of law and not entitled to deference. By classifying the district court's ultimate determination of law as a "factual finding," the majority avoids its duty to properly analyze the legal issue presented.
Having failed to apply the correct standard of review, the majority compounds its error by misapplying the presumption in favor of the sheriff granted by La. C.C.P. art. 1292. Pursuant to the clear terms of Article 1292, the sheriff's office is to receive the benefit of a presumption that the sheriff's return showing service was made is correct. In the parlance of La. C.E. art. 302(3), this means that the trier of fact must infer that service was made if the sheriff's return, when received by the clerk of court who issued it, indicates the service was made unless the trier of fact is persuaded by evidence that service was in fact not made. Traditionally this court has held that this rebuttable presumption can only be overcome by clear and convincing evidence. Canterberry v. Slade Bros., 232 La. 1081, 96 So.2d 4 (1957); Logwood v. Logwood, 185 La. 1, 168 So. 310 (1936); Sims v. First Nat'l Bank, 177 La. 386, 148 So. 505 (1933). This standard of proof has been required because of a careful balance struck long ago by this court between the clear right of a party to receive notice and an opportunity to be heard and the necessity of certainty surrounding judicial proceedings. Sims, 177 La. at 388, 148 So. at 505.
The majority, however, ignores this longstanding rule and instead relies on a more recent case of this court that neither discusses this principle nor clearly mandates a change in this court's previous position. Roper v. Dailey, 393 So.2d 85 (La.1980) (on rehearing). Roper involved a nullity action which involved the issue of whether defendant had been properly served with process such that the default judgment entered against him should be annulled. On rehearing, the majority held that defendant had proved, by a preponderance of the evidence, that he was not served with citation and, consequently, that he was entitled to a judgment declaring the nullity of the default judgment entered against him. The majority discussed the preponderance of the evidence standard simply as being applicable to a nullity action. Although the majority did mention the presumption that the return *109 was correct and concluded that it was rebutted, the majority did not engage in any discussion of the traditional rule that the rebuttal was required to be made by a showing of clear and convincing evidence. In light of the lack of consideration given to this issue by the Roper majority, I believe the majority erred in its wholesale adoption of Roper's nonchalant conclusion that Louisiana now allows the presumption afforded a completed sheriff's return of service by Article 1292 to be rebutted by a preponderance of the evidence. At the very least, the majority should explain why Roper is not an aberration in our law and it should engage in a thoughtful discussion of the issue and explain why certainty surrounding judicial proceedings is no longer a valid policy consideration that underlies the presumption afforded by Article 1292.
The majority's confused analysis has destroyed the presumption of correctness accorded the sheriff's return and has clouded the issue of the applicable standard of review. When the correct standards are applied to the facts of this case, it becomes clear that Folger has not rebutted the presumption that service was made on its agent for service of process. There is no indication in the record that the sheriff's office did not follow its established procedure in handling the service documents at issue. The sheriff's return, which was stamped a day or two after service was made pursuant to its procedure, indicates that service was made on a CT Corporation employee. Folger has introduced no evidence to rebut the presumption that service was validly made on its agent for service of process. The majority attempts to induce an inference that the sheriff's office must have made a mistake in this case by reciting testimony that CT Corporation occasionally received service that was not directed to it, and, since the time that different procedures were instituted after the date at issue, it has not received service documents on the day it should have. The majority's resolution of this case relies heavily on the fact that testimony reveals that the sheriff's office occasionally made mistakes in its delivery of service, but the opinion fails to disclose that the mistakes did not involve a failure of service, but were made when the parties gave incorrect or incomplete service information. In fact, a complete reading of the testimony reveals that the sheriff's office did serve documents on CT Corporation that were not meant for it, but this was generally because of a mistake on the parts of the parties. For example, the entity to be served may not have been a client of CT Corporation any longer, although CT Corporation was still listed as its agent for service of process. Similarly, the party initiating service may have erroneously listed CT Corporation as the agent for service of process for the party to be served. Finally, a sheriff's office employee explained that CT Corporation has its offices in a large office building that houses other businesses. When the service documents are directed by a party to the address of the large building in which CT Corporation has its offices without a designation of the name of the business to be served, the sheriff's office might serve the documents on CT Corporation if it believes CT Corporation might be the agent of the party to be served. Testimony revealed that when this occurred, an employee of CT Corporation called the sheriff's office to notify it of the erroneous service and the sheriff's office picked up the documents and attempted to locate the business that should have received them. The mistakes referred to by the parties are insufficient to rebut the presumption of correctness afforded the sheriff's return. Importantly, neither Folger nor CT Corporation employees made any allegation *110 that a mistake actually occurred in this case.
In light of the complete lack of evidence showing some mistake, oversight, or deviation in routine procedure on the part of the sheriff's office in this case, I do not believe Folger has rebutted the presumption of correctness afforded the sheriff's return. I would therefore affirm the judgment of the court of appeal and reverse the judgment of the trial court annulling the default judgment. The majority reached a contrary and erroneous conclusion by applying the wrong standard of review, essentially ignoring the presumption in favor of the correctness of the sheriff's return, and mischaracterizing the evidence presented.
KNOLL, Justice, dissenting.
With all due respect to my esteemed colleagues, in my view the majority errs in determining a sufficiency of the evidence issue by a manifest error standard of review. As the majority correctly states, "... appellate review of factual determinations is the manifest errorclearly wrong standard ...." and "[t]he manifest error standard of review applies to all factual findings." (emphasis added). The issue before us does not involve the fact finding mission of the trial court. The trial court's factual findings are not disputed. In resolving the issue before us, we do not have to reevaluate testimonies or make credibility determinations which would trigger the well-established doctrine of manifest error review.
The issue squarely before us is correctly framed by the majority: "[Whether] the evidence it [Folger] presented at trial was sufficient to overcome the presumed validity of the sheriff's return by a preponderance of the evidence; ...." (emphasis added). In my view, because determining the sufficiency of the evidence neither involves a revaluation of facts nor makes credibility determinations, we are presented with a purely legal question subject to de novo review.
Throughout the majority opinion it indiscriminately mixes the issue of sufficiency of the evidence with factual determinations as though there is no distinction. This is incorrect and inherently flaws the analysis of the majority opinion. Sufficiency of the evidence presents a question of whether there is enough evidence, and does not concern the factual findings and credibility determinations made by the trial court.
My research has revealed that this court has not squarely addressed the standard of review to be applied in resolving the issue of sufficiency of the evidence.[1] In Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099, 93-3110, and 93-3112 (La. 7/5/94), 639 So.2d 216, 223, Justice Lemmon concurred stating, "[t]he manifest error rule is a standard used by appellate courts to resolve conflicting factual evidence; it is not a standard for determining sufficiency of the evidence.... [S]ufficiency of the evidence ... is a question of law." Id., 639 So.2d at 223-24. Justice Ortique and Justice Kimball also concurred in Ambrose, stating "[i]t is a question *111 of law whether plaintiffs' evidence is sufficient to prove gross negligence." Id., 639 So.2d at 223. Similarly, our appellate courts have conducted de novo reviews in instances where only legal questions were presented on appellate review. See Roberson v. August, 01-1055 (La.App. 4 Cir. 5/29/02), 820 So.2d 620, 624 (holding that an appellate court should uphold a directed verdict if the record supports the trial judge's conclusion based upon a sufficiency of evidence determination (a question of law)); Seymour v. Transocean Marine, Inc., 421 So.2d 325, 327 (La.App. 1 Cir. 1982) (holding that appellate courts conduct a de novo review of summary judgments and determine the appropriateness of the judgment on whether the record contains sufficient evidence to convince the court that no genuine issue of material facts exists); Holt v. Cannon Exp. Corp., 31, 271 (La.App. 2 Cir. 12/11/98), 722 So.2d 433, 436, writ denied 99-0104 (La.4/23/99), 742 So.2d 881 (holding that a motion for judgment not withstanding the verdict raises the question of whether the jury verdict, as a matter of law, is supported by any legitimate or substantial evidence); see also CHARLES ALAN WRIGHT, LAW OF FEDERAL COURTS § 95,683 (5th ed.1994) (stating "the motion for judgment n.o.v., like the motion for directed verdict, raises only a legal question. It can be granted only if there was `no legally sufficient evidentiary basis for a reasonable jury to have found for' the moving party.").
A determination of the sufficiency of the evidence does not involve a reevaluation of facts, but rather addresses whether the party saddled with the burden of proof has met the appropriate burden of persuasion. In the present case, the ultimate question before the trial court was whether Folger submitted sufficient controverting evidence to rebut the prima facie validity of the sheriff's return. My review of the appellate court decision in the present case shows the court of appeal neither reevaluated the factual determinations of the trial court, nor employed the manifest error standard in its review.[2] Rather, the court of appeal left the trial court's factual determinations in place, and properly reviewed the case de novo to determine the legal question of whether Folger provided sufficient evidence to rebut the statutory presumption that a sheriff's return of service of process "shall be considered prima facie correct." LA.CODE CIV. PROC. ANN. art. 1292.
A review of the leading authorities shows uncorroborated testimony is not sufficient to rebut the statutory presumption of the validity of the sheriff's return. In particular, legal commentators opine Roper v. Dailey, 393 So.2d 85, 88 (La. 1980)(on rehearing), the leading case on the presumptive validity of the sheriff's return, stands for the proposition that the uncorroborated testimony of the party attacking service, standing alone, is probably insufficient to tip the scales in that party's favor. 1 Frank L. Maraist & Harry T. Lemmon, Louisiana Civil Law TreatiseCivil Procedure § 8.5 (1999). Another commentator *112 stated as a general rule, "the uncorroborated testimony of the person served is insufficient to rebut the prima facie presumption unless the person served proves that service was impossible." 2 Steven R. Plotkin, Louisiana Civil Procedure 505 (2003)(emphasis added). As the appellate court in the present case noted, the jurisprudential basis for the presumption of validity is "the affirmative testimony of the official process server acting in the regular routine of duty without a motive to misrepresent must be preferred to the negative evidence of one claiming not to have been served, either for reasons of public policy or as a matter of probability." Hall v. Folger, p. 18, 843 So.2d at 634, quoting Hoffman v. Quality Chrysler Plymouth Sales, Inc., 706 S.W.2d 576, 580 (Mo.App. E.D. 1986).
Contrary to the majority opinion, I find the court of appeal correctly found "[t]he testimony of CT's employees was the testimony of the served defendant denying service. That testimony was not corroborated by any proof that the sheriff did not serve, or that it was impossible for him to have served, the Folger's petition on November 1, 1995." Hall v. Folger Coffee Co., 02-0920, p. 16 (La.App. 4 Cir. 4/9/03), 843 So.2d 623, 633. The court of appeal was not requiring Folger to show "for certain" service was not made, as the majority finds. Rather, the court of appeal was requiring Folger to rebut the presumption of validity with sufficient evidence. The mere uncorroborated testimony of the person served, with nothing more, is simply insufficient to carry this burden. Maraist and Lemmon, supra; Plotkin, supra.
The court of appeal correctly recognized that given the large volume of services that the East Baton Rouge Sheriff's Office and CT routinely handle,[3]neither entity had a fool-proof record keeping system, and because neither entity knew for certain if service was actually made, the decisive factor was the presumption of validity given the sheriff's return. In reaching this conclusion, the court of appeal did not substitute its weighing of the evidence for that of the trial court. The record clearly shows that neither CT nor the Sheriff's office knew for certain if service was actually made. Because neither entity had a fool-proof record keeping system, the scales that weighed the evidence were equally balanced. Accordingly, the decisive factor was the presumption of validity given the sheriff's return.
The majority opinion sets a dangerous precedent and has failed to show what evidence Folger produced to prove it was more probable than not CT did not receive service of process. The trial court's determination was a finding of law, not a finding of fact, and was subject to the de novo standard of review. The undisputed testimony of the three CT employees was nothing more than uncorroborated testimony of a party attacking service.[4]See Plotkin, at 508, citing, inter alia, Citibank (South Dakota) v. Keaty, 599 So.2d 500 (La. App. 3 Cir.1992), for the proposition that the presumption that a sheriff's return is correct and may not be overcome by the uncorroborated testimony of the party upon whom service was supposedly made. The employees of CT testified to the procedures routinely used to process service documents. While these witnesses were not the litigants served, they were employees *113 of the agent for service of process. Their testimony was not corroborated by any proof that the sheriff did not serve, or that it was impossible for him to have served, the petition for damages.
The majority opinion undermines the stability of judicial proceedings by allowing a party who attacks service to rebut the presumption of validity with uncorroborated testimony. For these reasons, I respectfully dissent.
NOTES
[1] Mr. Hall's employer is identified in the Halls' petition as LVL Trucking Company. However, another company, T.T.C. Illinois, Inc., filed a Petition of Intervention in this suit, seeking to assert its rights under the Louisiana Workers' Compensation Law. The court of appeal referred to T.T.C. as Mr. Hall's employer. Further, T.T.C.'s right to intervene in the nullity action was upheld by the court of appeal in Hall v. Folger Coffee Co., XXXX-XXXX, 0669 (La.App. 4 Cir. 2/7/01), 781 So.2d 620.
[2] La.Code of Civ. Proc. art. 1292 provides, in pertinent part, as follows:

The sheriff shall endorse on a copy of the citation or other process the date, place, and method of service and sufficient other data to show service in compliance with law. He shall sign and return the copy promptly after the service to the clerk of court who issued it.
[3] La.Code of Civ. Proc. art. 1701 provides, in pertinent part, as follows:

If a defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him.
[4] La.Code of Civ. Proc. art. 1913 provides, in pertinent part, as follows:

C. Notice of the signing of a default judgment against a defendant on whom citation was served personally, or who filed no exceptions or answer, shall be mailed by the clerk of court to the defendant at the address where personal service was obtained or to the last known address of the defendant.
[5] The appeal of the default judgment was originally stayed by the court of appeal pending final resolution of the nullity action. Hall v. Folger Coffee Co., 96-2146 (La.App. 4 Cir. 1/16/97) [unpublished]. The court of appeal later dismissed the appeal as abandoned, but preserved all the issues presented by the appeal of the default judgment for the appeal of the nullity judgment. When the court of appeal entered the judgment being reviewed herein reversing the district court decision nullifying the default judgment, it gave Folger the opportunity to brief the issues it raised in the appeal of the default judgment. Hall v. Folger Coffee Co., XXXX-XXXX, p. 20 (La.App. 4 Cir. 4/9/03), 843 So.2d 623, 635. Thereafter, the court of appeal affirmed the default judgment. Hall v. Folger Coffee Co., XXXX-XXXX (La.App. 4 Cir. 10/01/03), 857 So.2d 1234. That judgment is not before this court in this appeal.
[6] Folger Coffee Co. v. Hall, 97-2472 (La.App. 4 Cir. 6/24/98), 715 So.2d 1224.
[7] Hall v. Folger Coffee Co., XXXX-XXXX (La. App. 4 Cir. 10/10/01) [unpublished] and Hall v. Folger Coffee Co., XXXX-XXXX (La.App. 4th Cir.10/12/01) [unpublished].
[8] Folger Coffee Co. v. Hall, 2001-2784 (La.10/17/01), 799 So.2d 1140.
[9] During oral argument before this court, the Halls mentioned the fact that the district court's reasons for judgment were actually written by Folger, but it did not raise this issue in its brief in this court or in the court of appeal. We note that at least two Louisiana courts of appeal have expressed their belief that courts of appeal should not place any "real value" on reasons for judgment written by one of the parties. See Bell v. Ayio, 97-0534 (La.App. 1 Cir. 11/13/98), 731 So.2d 893; State, Dept. of Trans, v. August Christina & Brothers, Inc., 97-244 (La.App. 5th Cir.2/11/98), 716 So.2d 372, writ denied, XXXX-XXXX (La.2/5/99), 738 So.2d 7. Since the issue has not been raised by the parties to this case, we do not expressly address it herein. However, we note the well-established rule that a district court's failure to issue (any) reasons for judgment is not grounds for reversal of the judgment. See Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32, 441 (La.App. 2 Cir. 12/8/99), 748 So.2d 594. We also note that the portion of Folger's brief reproduced by the district court and adopted by the district court as its reasons contains only correct statements of law and conclusions of fact. Accordingly, we find that the manifest error standard applies to both the district court's fact-supported judgment itself and to the factual determinations implicit in the district court's adoption of that portion of Folger's post-trial memorandum.
[10] La.Code of Evid. art. 308.
[11] La.Code of Evid. art. 302(3).
[12] La.Code of Evid. art. 304.
[13] La.Code of Evid. art. 306.
[14] La.Code of Evid. art. 302(1).
[15] Supra.
[16] See La.Code of Evid. art. 302(3).
[17] See, supra.
[18] See La.Code of Evid. art. 306.
[19] See, supra
[20] See, supra.
[21] See, supra.
[22] One of Folger's arguments in support of this assignment of error is that the particular sheriff's return on service of process at issue in this case is meaningless and therefore not entitled to the benefit of the presumption established by La.Code of Civ. Proc. art. 1292. In support of this argument, Folger cites testimony of representatives of the East Baton Rouge Parish Sheriff's Office concerning the established routine it used in 1995 for delivering service documents to CT Corporation. Folger would have this court consider that evidence in order to determine whether the presumption of validity afforded completed sheriff's returns of service is even applicable to this case.

Folger's argument is based on a misapprehension of the purpose of the legally-established presumption of validity afforded completed sheriff's returns of service. The entire purpose of the presumption is to eliminate the need for the sheriff to present evidence concerning the validity of the return. In this case, the sheriff elected to present evidence; however, that fact cannot form the basis for ignoring a legal presumption. Acceptance of such an argument would effectively invalidate the presumption that has been established by Louisiana law for the benefit of the civil law system. Thus, we reject Folger's argument that the presumption should not apply under the facts of this case.
[23] Folger also presented the testimony of two of its own employees to show that the Halls' petition in this case was never delivered by CT Corporation to Folger or to Proctor and Gamble. However, the Halls have never asserted that Folger actually received service, only that its agent for service of process received service. Therefore, that testimony is not discussed herein. In fact, we are satisfied that the Halls' original petition was never actually delivered to Folger or Proctor and Gamble by CT Corporation.
[24] Deputy Thompson also picked up a similar bundle of service documents directed to the Secretary of State that had been prepared by another deputy every morning, because both CT Corporation and the Secretary of State were on Deputy Thompson's route.
[25] Deputy Thompson couldn't remember when the Sheriff's Office started receiving a copy of the log sheet. In fact, he indicated his belief that CT Corporation had been given an opportunity to receive a copy of the log sheet prior to November 1, 1995, but had declined. However, that testimony was inconsistent with the testimony of Deputy McGee, who indicated that the sheriff's department did not offer that option to CT Corporation until after it started using the new computer system, sometime after November 1, 1995, when it automatically started sending the log sheet.
[26] Deputy Thompson testified that he could not remember whether CT Corporation was receiving a copy of the log sheet on November 1, 1995.
[1] The majority itself acknowledges the importance of this conclusion to its analysis by stating, "We note that this decision is based purely on our finding that the district court's factual findings in this case were not manifestly erroneous." Op. at p. 104.
[2] The majority clearly states that "the parties presented conflicting evidence on the pivotal issue in this case, as further detailed below." Op. at 99. Following this statement, the majority then reiterates the standard of manifest error review and summarizes, without absolute objectivity, the testimony presented by the parties. The majority does not, however, detail the points at which the evidence conflicts on the pivotal issue.
[1] This Court did not grant the writ application in Nabors Drilling USA v. Davis, 03-0136 (La. 10/21/03), 857 So.2d 407, to address the standard of review in a sufficiency of the evidence case. Nabors contains only a passing comment on the question of the standard of review and in no way represents a thorough analysis of the subject. In that regard, the majority opinion in Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, only mentions the debate over sufficiency of the evidence review in a footnote and does not delve deeply into the question. Id., 639 So.2d n. 6 at 221. Thus, I find this Court has never spoken directly on this question.
[2] Although the appellate court concluded its analysis with a statement that "the trial court was manifestly erroneous in finding that Folger rebutted the presumption and in annulling the default judgment," a close reading of the decision makes it clear the reviewing court's choice of words was incorrect and it is equally obvious the court conducted a de novo review of the case. It is well settled that reviewing courts should look beyond judicial phraseology and recognize the analysis that actually occurred. Duncan v. State, Dept. of Transp. & Dev., 556 So.2d 881, 887 (La.App. 2 Cir. 1990); Moody v. Terry's Roofing & Sheet Metal, Inc., 552 So.2d 624, 626 (La.App. 2 Cir. 1989). I find it telling that in its brief before this Court, Folger complains that the appellate court conducted an unwarranted de novo review.
[3] Testimony showed that CT received approximately 20,000 service per year; Deputy Thompson stated that he made three to four thousand service per month.
[4] By this statement I do not mean to imply in any way that the veracity of their testimony is doubted, but rather it is insufficient proof.