JAMES BARTHOLOMAE　　　　*　　NO. 2022-C-0437

VERSUS　　　　　　　　　　　*

VALERO REFINING　　　　　　*　　COURT OF APPEAL

MERAUX, LLC　　　　　　　　　　FOURTH CIRCUIT

　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　STATE OF LOUISIANA

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 21-0482, DIVISION "B"
Honorable Jeanne Nunez Juneau, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Paula A. Brown, Judge Karen K. Herman)

Raymond P. Ward
Roland M. Vandenweghe, Jr.,
Taylor E. Brett
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139-4596

Jacque R. Touzet
900 Camp Street, Floor 3
New Orleans, LA 70130

　　　COUNSEL FOR RELATOR

Lance v. Licciardi
LICCIARDI LAW OFFICE, L.L.C.
1019 W. Judge Perez Dr.
Chalmette, LA 70043

Michael C. Ginart, Jr.
2114 Paris Rd.
Chalmette, LA 70043

　　　COUNSEL FOR RESPONDENT

**WRIT GRANTED; JUDGMENT
REVERSED AND RENDERED
February 1, 2023**

*RML*

*PAB*

*KKH*

This is a negligence action arising out of an accident, fire, and explosion in the hydrocracker unit at the Valero refinery in Meraux, Louisiana that occurred on April 10, 2020, at 12:46 a.m. (the "Explosion"). Relator—Valero Refining-Meraux, L.L.C. ("Valero")—seeks review of the trial court's May 26, 2022 judgment awarding emotional damages to Respondent, James Bartholomae. In light of the Louisiana Supreme Court's recent decision in *Spencer v. Valero Refining Meraux, L.L.C.*, 22-00469, 22-00539, 22-00730, ___ So.3d ___ (La. 1/27/23), 2023 WL 533268 ("*Spencer 2*"),[1] we grant Valero's writ, reverse the trial court's judgment, and render judgment dismissing Mr. Bartholomae's claims against Valero.

*Factual and Procedural Background*

On January 14, 2021, Mr. Bartholomae filed a petition for damages in the justice of the peace court. He claimed "emotional damages" stemming from the Explosion, including fear, fright, anxiety, inconvenience, and frustration. Valero

---

[1] This court, at Valero's request, held this writ application pending the Louisiana Supreme Court's decision in *Spencer 2* case, which was pending when this writ was filed.

1

filed exceptions, an answer, and affirmative defenses. The justice of the peace issued a judgment granting Valero's motion to dismiss. In response, Mr. Bartholomae filed a petition for appeal with the trial court pursuant to La. C.C.P. art. 4924(A).[2] Valero again filed exceptions, an answer, and affirmative defenses. Thereafter, the matter proceeded to trial *de novo*.[3]

At trial, Mr. Bartholomae testified that, on the date of the Explosion, he resided four blocks from Valero's refinery. He had resided at that location for over fifteen years. He had been a St. Bernard Parish Sheriff's office employee for thirty years. He was employed by the St. Bernard Parish District Attorney's office as an investigator.

According to Mr. Bartholomae, either his house shaking or the sound of the Explosion caused him to wake up on the night of the Explosion. After waking up, he looked out the bathroom window and could see the refinery was on fire. He described it as a giant fireball. Although Mr. Bartholomae acknowledged that fire from the refinery's flares was common, he described the fire from the flares on the night of the Explosion as larger than the normal flares and more concerning. He explained that he was concerned because he lacked knowledge of what was in the air and whether another explosion would occur. He testified that he was anxious and concerned for his safety and that of his family.

---

[2] La. C.C.P. art. 4924(A) provides that "[a]ppeal from a judgment rendered by a justice of the peace court or a clerk of court shall be taken to the parish court or, if there is no parish court, to the district court of the parish in which the justice of the peace court is situated."

[3] La. C.C.P. art. 4924(B) provides that "[t]he case is tried *de novo* on appeal."

Mr. Bartholomae further testified that he, his wife, and his mother-in-law—who were together in his house that night—stayed awake for a few hours following the Explosion watching the news and listening to the radio for any alerts. The next morning, there was soot covering the family's vehicles that were parked outside his house. On cross-examination, Mr. Bartholomae acknowledged that the soot on the vehicles washed away. On cross-examination, Mr. Bartholomae also acknowledged that his job required him to deal with life-threatening situations; however, he explained that, in his job, he possessed knowledge and a certain amount of control, which he lacked regarding the Explosion.

Following the Explosion, Mr. Bartholomae admitted that he did not smell any odors, seek counseling, or seek medical attention from a doctor. He defined "severe emotional distress" to mean that "a person would have trouble functioning," and he admitted that he had no trouble functioning. The day after the Explosion, Mr. Bartholomae returned to his ordinary routine, including work.[4]

Following trial, the trial court issued written reasons for judgment. In its reasons, the trial court cited to this court's decision in *Spencer v. Valero Ref. Meraux, LLC*, 21-0383, p. 7 (La. App. 4 Cir. 2/2/22), ___ So.3d ___, 2022 WL 305319 ("*Spencer 1*"), in support of its finding that Valero was negligent for the Explosion. In addressing Mr. Bartholomae's damage claim, the trial court made the following observations regarding Mr. Bartholomae:

- He observed a "fireball," which he described as a "scary thing";

---

[4] Although other witnesses were called to testify, the testimony of the other witnesses related to Valero's fault, which is not relevant here.

- He expressed concerns about a release of chemicals that could affect his health and the health of his family, which made him anxious; and

- He remained awake after the Explosion and attempted to obtain information.

Quoting *Spencer 1*, the trial court observed:

> Although Valero's incident report indicates that it monitored SO2 levels in the air of the neighborhoods surrounding the refinery and found no significant results, we find that provided little to no solace to residents, as Valero did not contemporaneously communicate the results to the public. . . . Proximity to the event, witnessing injury to others, and contemporaneous reports from reliable sources that danger is real are indicia of the reliability of claims of emotional distress. . . . Legitimate concern about one's health is compensable.

Comparing Mr. Bartholomae's circumstances to that of the two plaintiffs in

*Spencer 1*,[5] the trial court observed:

> Like *Spencer*, Mr. Bartholomae was in close proximity to the area of the refinery where the explosion occurred, within four blocks.

---

[5] *Spencer 1* involved two plaintiffs—Brittany Spencer and Chloe LaFrance. In *Spencer 1*, we outline the pertinent facts as follows:

> [T]he explosion occurred 2,000 feet away from Ms. Spencer's townhouse apartment and that a huge fire ball or flame appeared above the refinery, lighting up the night sky. The explosion also caused a shock wave that shook the apartment and windows and woke Ms. Spencer and Chloe in the middle of the night. Further, the court described video evidence of emergency vehicles entering the refinery and neighbors exiting their homes. Eight-year-old Chloe was frightened and anxious as a result. . . . Ms. Spencer, who was four months pregnant, was afraid for her family's safety and specifically about whether harmful chemicals were released into the air. Her concern led to the family's departure from their apartment between April 10 and 13, 2020, and after their return, Ms. Spencer refused to allow her children to play outside. . . . Although she and her family moved out of St. Bernard Parish in June 2020, Ms. Spencer remained anxious about possible adverse health effects from the explosion. . . .[T]hese circumstances caused compensable emotional distress to Ms. Spencer and, more minimally, to Chloe.

*Spencer 1*, 21-0383, pp. 6-7, ___ So.3d at ___, 2022 WL 305319, *3. The Supreme Court consolidated its review of this court's decision in *Spencer 1* with two other cases, each involving a single plaintiff. The plaintiffs in each of the other cases were Rosemary Gaglian and Kevreion Raines. Thus, as the Supreme Court noted in *Spencer 2*, its review involved the claims of four plaintiffs seeking to recover emotional distress damages arising out of the Explosion (the "Plaintiffs").

Through his bathroom window, he observed the refinery on fire. Additionally, he observed a fireball that he described as "scary." Though he did not directly witness injury to others, these observations indicate to a reasonable person that both injury and real danger were present. The major concern for Mr. Bartholomae was the release of chemicals in the air caused by the explosion. While Valero found no dangerous chemical levels in the air in the community, they failed to contemporaneously communicate this to the public. Mr. Bartholomae's concern for his health and the health of his family from the chemical release is genuine, serious and reasonable under these circumstances.

For these reasons, the trial court awarded Mr. Bartholomae $1,250 in damages.

This writ followed.

## DISCUSSION

The instant writ application, as noted elsewhere in this writ opinion, is before this court as an application for review of a trial court's decision following a trial *de novo* conducted pursuant to La. C.C.P. art. 4924(C). The applicable standard of review is the same as in civil cases in general—the manifest error or clearly wrong standard. *Spencer 2*, 22-00469, 22-00539, 22-00730, p. 8, ___ So.3d at ___, 2023 WL 533268, *4 (citing *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98; *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989)).

In its writ, Valero contends that the trial court erred in awarding damages for emotional distress absent physical injury or property damage. Valero further contends that Mr. Bartholomae's distress was not severe. Although Valero makes numerous arguments in its writ regarding what the legal standard should be for awarding emotional distress damages without physical injury, the Louisiana Supreme Court in *Spencer 2* addressed those arguments and definitely decided this issue. Because we find *Spencer 2* dispositive of this writ, we find it necessary to provide a summary of that case before reaching the merits of this writ.

*Spencer 2 Case*

5

At the outset, the Supreme Court in *Spencer 2* noted the similarities shared by the four Plaintiffs in the trio of consolidated cases before it. The Supreme Court observed that "[n]one of the Plaintiffs experienced any physical symptoms, nor received any medical treatment" and all of the Plaintiffs seek damages "for general fear and anxiety resulting from the [E]xplosion." *Spencer 2*, 22-00469, 22-00539, 22-00730, p. 11, ___ So.3d at ___, 2023 WL 533268, *6.

Next, the Supreme Court addressed the Plaintiffs' general negligence claim for emotional distress absent physical damage or injury, observing:

> Valero owed a duty to protect those in the surrounding community. . . . Plaintiffs fall within the broad class of plaintiffs to whom a duty is owed. In this case, Valero breached the duty it owed, which was a cause-in-fact of Plaintiffs' generalized fear and anxiety. [But,] . . . the element of damages within the parameters of claims for negligent infliction of emotional distress absent physical damage/injury were not proven. Stringently applying the rule of *Moresi* [*v. State Through Dep't of Wildlife & Fisheries*,] 567 So.2d [1081,] 1096 [(La.1990)], Plaintiffs failed to prove "the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." No Plaintiff has put forth sufficient evidence that the mental disturbance suffered was "serious." *Moresi*, 567 So.2d at 1096. Viewing the record in its entirety, we find that a reasonable factual basis does not exist to support the awards for negligent infliction of emotional distress; thus, we find the lower courts manifestly erred.

*Spencer 2*, 22-00469, 22-00539, 22-00730, pp. 17-18, ___ So.3d at ___, 2023 WL 533268, *9. The Supreme Court added that "recovery for negligent infliction of emotional distress absent physical damage/injury is not precluded; however, given the nature of such claims, a trier of fact must be heedful of the goal of preventing spurious claims, and that not every occasion that causes some harm yields concomitant liability and compensatory damages." *Spencer 2*, 22-00469, 22-00539, 22-00730, p. 15, ___ So.3d at ___, 2023 WL 533268, *8.

6

Lastly, the Supreme Court addressed the Plaintiffs' codal nuisance claim, observing:

> A landowner's right of ownership does "require that he tolerate some inconvenience from the lawful use of a neighbor's land." Based upon the facts of the cases before us, Plaintiffs have failed to prove that Valero "interfered substantially" with their enjoyment of their property. Proof of mere inconvenience is insufficient, and the codal doctrine of nuisance may not be used as a grounds to provide remedies for claims which would otherwise fail under the guidelines set forth herein relative to negligent infliction of emotional distress absent physical damage/injury. Additionally, in order to recover, a plaintiff asserting claims under La. Civ. Code arts. 667-669 must prove damages. . . . Plaintiffs have failed to meet their burden of proving damages.

*Spencer 2*, 22-00469, 22-00539, 22-00730, p. 20, ___ So.3d at ___, 2023 WL 533268, *11.

Summarizing, the Supreme Court acknowledges that the facts regarding each of the Plaintiffs in the trio of consolidated cases before were different and commented that "some approach the brink of that Plaintiff having made the requisite showing." *Id.* But, the Supreme Court found that none of the Plaintiffs satisfied the burden of proving an entitlement to an emotional damages award. *Id.* Stated otherwise, the Supreme Court found that none of the Plaintiffs established the mental disturbance that Plaintiff suffered was "serious."

*Mr. Bartholomae's Case*

Mr. Bartholomae—similar to the *Spencer 2* Plaintiffs—experienced no physical symptoms, received no medical treatment, and seeks damages for general fear and anxiety resulting from the Explosion. Although the facts here are different in some respects from those of each of the Plaintiffs in the trio of cases in *Spencer 2*, every fact on which a finding that Mr. Bartholomae would be entitled to

emotional distress damages is shared by one or more of the Plaintiffs in *Spencer 2*.[6]

Those facts are as follows:

- Mr. Bartholomae's closeness to the refinery—four blocks from it;

- Mr. Bartholomae's feeling the vibration or seeing the fire from the Explosion;

- Mr. Bartholomae's losing sleep following the Explosion;

---

[6] The facts regarding the two plaintiffs in *Spencer 1* are set forth elsewhere in this opinion. The facts as to the other two plaintiffs are as follows:

**Kevreion Raines**

When the explosion occurred, Plaintiff, Kevreion Raines, was at her home helping her aunts, Robin Leflore and Lisa Leflore, change the trach tube for her mother, Rosalind Leflore, a ventilator-dependent ALS patient. The explosion sounded "like a bomb" to her. She felt "the vibration," and the house shook. The lights began to flicker, and the alarms of Ms. Rosalind's ventilator went off. Ms. Rosalind became distressed. Ms. Raines and her aunts attempted to settle her down and finish the trach care. When Ms. Raines went outside, she saw "big gray clouds of smoke[,]" which was "very scary[.]" She did not notice any unusual odors or smoke in the house, nor in the area around the home. Ms. Raines remained at her mother's bedside until later that morning.

At first, Ms. Raines had trouble sleeping, but she returned to her normal sleep schedule a couple of days after the explosion. Ms. Raines continued to feel uncomfortable living in the house out of fear it may happen again. She was of the belief that the explosion caused cracks in the ceiling and "little small cracks within the floors" of the home. At the time of trial, Ms. Raines felt fear in the back of her mind and remained uncertain about what was in the air and if it was safe.

*Rosemary Gagliano*

At the time of the explosion, Plaintiff, Rosemary Gagliano, was staying at her mother's home. She heard a loud "boom" that shook everything in the home. The noise woke her up and scared her. She witnessed a "glow," and the explosion "lit up the house through the blinds[.]" Ms. Gagliano was "shaky and very scared." She went outside and saw the flames. She and her mother left the home and began driving away from the refinery; however, the roadway was blocked. Therefore, Ms. Gagliano drove in the opposite direction and went to her sister's home nearby. Ms. Gagliano and family members sat outside until early morning "nervous" and "shaking[.]" Eventually, she went inside and dozed. She returned home the evening of April 10, 2020. Ms. Gagliano remained nervous that an explosion was going to happen again. The explosion did not affect her daily lifestyle, she was "just leery about it[.]"

*Spencer 2*, 22-00469, 22-00539, 22-00730, pp. 5-7, ___ So.3d at ___, 2023 WL 533268, *3-4.

- Mr. Bartholomae's worries over if something was in the air and if another explosion might occur; and

- Mr. Bartholomae's fear for his health and safety and that of his family.

None of these facts, alone or taken together, was found to be sufficient to meet the *Spencer 2* Plaintiffs' burden of proving "serious" mental distress.[7]

Summarizing, Mr. Bartholomae—like the *Spencer 2* Plaintiffs—failed to meet his burden of proving "serious" mental distress. Mr. Bartholomae's circumstances cannot be distinguished from the *Spencer 2* Plaintiffs' circumstances. Accordingly, the Supreme Court's holding in *Spencer 2* is dispositive and dictates that we reverse the trial court's award of damages to Mr. Bartholomae.

## DECREE

For the foregoing reasons, we grant Valero's writ application, reverse the trial court's May 26, 2022 judgment awarding damages to Mr. Bartholomae, and render judgment dismissing Mr. Bartholomae's claims against Valero.

**WRIT GRANTED; JUDGMENT REVERSED AND RENDERED**

---

[7] In so finding, we note the lack of a definition of the term "serious" in *Spencer 2*. *See Spencer* 2, 22-00469, 22-00539, 22-00730, p. 20, ___ So.3d at ___, 2023 WL 533268, *16 (Crain, J., concurring) (observing that "[t]he problem with the majority's approach is that "serious" is not defined; rather, it is left to be defined in an ad hoc manner").